## COUILLARD vs. JOHNSON and others.

*Venue in personal action : When removal to defendant's county may be. denied. — Statute of frauds. — Evidence. — Instructions.*

1. Under sec. 6, ch. 123, R. S., defendant's demand for a removal of the cause to the county in which he resides and where the summons was served, may be denied on the ground that "the convenience of witnesses and the ends of justice will be promoted" by such denial.
2. Part of a raft of logs which plaintiff had sold to A. and was running to market, came into defendants' possession, and were then resold by A. to plaintiff, and afterward disposed of by defendants. *Held,* that no *demand* was necessary to enable plaintiff to maintain his action as for a conversion.
3. The logs not having been separated and delivered to A., the possession was in plaintiff as against him, and no written memorandum of such resale to plaintiff was necessary under the statute of frauds.
4. Where the answer to a question improperly allowed states only facts admissible in evidence, the error is cured.
5. An instruction to the jury "that if the logs were cut on lands belonging to defendants, under an agreement with plaintiff that he should cut and put them in the river for defendants, they should find for defendants," was properly refused, where it appeared that defendants' only claim on the land was a lien for moneys which there was reason to believe had been paid by plaintiff.

APPEAL from the Circuit Court for *Oconto* County.

Action for the conversion by defendants of plaintiff's logs. Defendants demanded that the cause be tried in Milwaukee county, where they all resided and were served with the summons; and, plaintiff having refused to comply with the demand, they, after answering, moved the court for an order transferring the cause. Plaintiff having filed an affidavit showing that the convenience of his witnesses required the trial to be had in Oconto county, the court denied the motion. Afterward the defendants' attorney noticed the cause for trial; but when it was called he objected to proceeding therein, on the ground that the court had lost jurisdiction. The objection was overruled.

Plaintiff's own testimony tended to show that the logs in question, together with others cut by him for defendants, were taken by the latter into their boom in the vicinity of a saw-mill belonging to them in Oconto county; that plaintiff knew of their being so put in the boom, and neither authorized nor forbade its being done; that plaintiff had previously agreed to sell and deliver to Farnsworth, Mears & Co. 200 M of his logs; that only about 91 M of these were so delivered, and the remainder were detained in defendants' boom; that F., M. & Co. paid plaintiff $600 on said logs, and perhaps more, the contract price being five dollars per M; that plaintiff did *not* execute to them any bill of sale; that after receiving the 91 M, F., M. & Co. excused plaintiff from delivering the balance. "I told Farnsworth to go on and get the 200 M [from defendants]; he said, that, rather than have a law-suit, he would release the logs to me, and I should go on and fight it out myself. * * Farnsworth never gave me a bill of sale of those logs; he never went near them; he did not tell me how many there were. I think he sold me back the 200 M before he got the 91 M. I never demanded the logs after Farnsworth sold them back to me." There was other evidence for the plaintiff not necessary to be stated here.

The evidence for defendants tended to show that plaintiff, in 1865 and 1866, was indebted to them for supplies of provisions, etc., and also for moneys advanced to pay for land sold to plaintiff by a Mrs. Jones; that plaintiff was to deliver these logs to them in payment of this indebtedness; that, in pursuance of their agreement with him, they took a deed of the land to themselves as a security for the money advanced, and still held the legal title; that an accurate account had been kept of the logs cut by plaintiff and sawed at their mill; and plaintiff had been credited with the amount thereof at the price agreed; and that, upon a full state-

ment of the account between them and plaintiff, as appeared from their books, he was still indebted to them in a small sum. It appeared that the logs in dispute were cut on the land deeded to defendants by Mrs. Jones. George Farnsworth, for defendants, testified that, in the fall of 1865, his firm (Farnsworth, Mears & Co.) bought 200 M of logs from plaintiff, for $1,000, and took a bill of sale of them (which was put in evidence); that they paid him at the time $800, and had previously advanced some; and that only 91 M were delivered. On cross-examination, he said: "I don't claim the balance of the 200 M. Plaintiff and I had a talk about them; he wanted me to replevy them; I said I wanted no law-suit; that he must deliver me the logs, or I would not have them. The substance of the talk was, that his account with me was good, and I would not go to law for the delivery of them." Plaintiff then asked the witness the following question: "Did you release any claim you might have to these logs, or any right of action you might have had against *Johnson* for them?" Objection overruled. *Answer:* "I told plaintiff that I didn't want any law-suit to get the logs; that I would give up all my right, title and interest in them, and he might bring the action and fight it out himself." On his re-direct examination, the witness said: "I gave up all my right, title and interest in the logs that had not been delivered. I charged plaintiff back the 200 M, and gave him credit for what I got. He did not pay me any money for those logs. I did not give him any bill of sale of them. No writing was made between us of that sale. Plaintiff did not pay me any thing at that time; made no consideration for the transaction." There was some rebutting testimony for the plaintiff, as to the state of accounts between himself and defendants; as to whether he had agreed to let defendants have the logs in question to pay his indebtedness, either on general account or for moneys advanced to pay for

the land purchased of Mr. Jones; and as to whether he had ever agreed that the deed of said land should be executed to defendants.

The instructions given, and those refused, by the court are recited in the opinion. Verdict for the plaintiff; new trial denied; and defendants appealed from the judgment.

The bill of exceptions does not state that it contains all the evidence.

*Waldo, Ody & Van*, for appellants, as to the alleged error of the circuit court in refusing to change the place of trial, and the propriety of reviewing the same on appeal, cited R. S. ch. 123, sec. 4; *Baldwin v. Marygold*, 2 Wis. 419; *Foster v. Bacon*, 9 id. 345; *Rives v. Boyd*, 7 id. 155; *Brownell v. McArthur*, 13 id. 407; *State v. Kneifle*, id. 369; *Bank v. Tallman*, 15 id. 92; *Punch v. New Berlin*, 20 id. 190; Laws of 1860, ch. 264, secs. 6 and 12. 2. It was error to allow the plaintiff to ask the witness Farnsworth if he had released any claim, *or any right of action* he had against the defendants for the logs. *A right to sue for a tort* is not assignable. R. S. ch. 122, sec. 140; *Ins. Co. v. Eaton*, 11 Leg. Obs. 140; *Thurman v. Wells*, 18 Barb. 500; *Gardiner v. Adams*, 12 Wend. 297; *Hall v. Robinson*, 2 Comst. 293; *Cass v. R. R. Co.*, 1 E. D. Smith, 522; 2 Sumn. 206–211. 3. The court erred in holding that it was unnecessary to prove demand of the logs from the defendants, they having, as the proof showed, been properly in the defendants' possession, and not having been purchased by the plaintiff until after the conversion complained of. 12 Wend. 297; *Hall v. Robinson*, 2 Comst. 293; *Bowman v. Eaton*, 24 Barb. 528; 1 E. D. Smith, 522. 4. The court erred in refusing the instruction asked for by the defendant.

*Ellis & Hastings*, for respondent, contended that the refusal of the court to grant a change of venue was not reviewable on appeal from final judgment. Laws of

Couillard vs. Johnson and others.

1860, ch. 264, secs. 6 and 10; *Cobb v. Harrison*, 20 Wis. 626. 2. If the court erred in not allowing a change of venue, the error was cured by the subsequent waiver and consent on the part of the defendants in noticing the cause for trial in the Oconto circuit, and moving, after judgment, for a new trial in the same court. *Lowe v. Stringham*, 14 Wis. 224; *Woodruff v. Sanders*, 18 id. 162; 16 id. 222; 6 Wend. 333; Broom's Legal Maxims, 129–131. 3. It was not necessary to prove demand of the logs. *Decker v. Mathews*, 12 N. Y. 313; *Esmay v. Fanning*, 9 Barb. 189; *Boyce v. Brockway*, 31 N. Y. 492; *Dudley v. Hawley*, 40 Barb. 398; *Morrill v. Moulton*, 40 Vt. 242; *Tinker v. Morrill*, 39 id. 477; *Gilmore v. Newton*, 9 Allen, 171; *Kimball v. Billings*, 55 Me. 147.

Dixon, C. J. The question supposed to have been involved, but which was not, and so not decided, on the application for a *mandamus* in *State ex rel. Johnson v. Washburn* (22 Wis. 99), is now presented and must be determined. It is, whether the court erred in refusing to change the place of trial of the action from Oconto county, in which the action was commenced, to Milwaukee county, in which all of the defendants resided, and where they were served with the summons and complaint. Before the time for answering expired, the defendants demanded in writing, that the trial be had in the proper county, to wit, the county of Milwaukee. The plaintiff's attorney having refused to change the place of trial as demanded, the defendants thereupon answered, and afterward moved the court for an order changing it. The motion was resisted by the plaintiff, on the ground, shown by affidavit, that the cause of action arose in Oconto county, and that the convenience of witnesses and ends of justice required that it should be tried in that county. The court denied the motion, and compelled the defendants to go to trial in Oconto county. Whether this action of the court was correct or not, depends on the

construction to be given to section 6, chap. 123, R. S., which reads as follows : "The court may change the place of trial in the following cases :

"1. Where the county designated for that purpose in the complaint is not the proper county.

"2. Where there is reason to believe that an impartial trial cannot be had therein.

"3. When the convenience of witnesses and the ends of justice would be promoted by the change.

"4. When the parties or their attorneys shall stipulate in writing to change the place of trial."

If it is understood that, upon an application under one of these clauses, the court is limited to an examination of the facts shown in support of such application, and cannot hear evidence or inquire into the propriety of the proposed change with reference to the requirements of any of the other clauses, then the action of the court below was wrong. But if, on the other hand, it is not so understood, and the proper construction is that the court may, on motion for a change for one of the causes, hear other proofs offered, and examine and ascertain whether there exists any other and opposing cause of equal or greater force under the statute, and so deny the motion, then the court below was right. The statute contains no words expressly limiting the court to an investigation of the facts stated in support of a motion made under one clause, or prohibiting it from receiving counter affidavits, or listening at the same time to an opposing motion, made under some other clause. In New York, where they have the same statute, it has been held in some cases that a motion to change the place of trial, for the reason that the county designated in the complaint is not the proper county, cannot be opposed by the plaintiff on the ground of the convenience of witnesses. 3 Code Rep. 224 ; 5 How. 343. In others, the contrary doctrine has been held. *Mason v. Brown*, 6 How. 481. In the latter case, where the motion

was made after issue joined in the action, Judge HAR-RIS decided that it could be so opposed, for the reason that "it would be an idle ceremony to change the venue to the proper county upon the application of one party, when it is made to appear by the other party that the convenience of witnesses requires that the trial should be had in some other county." In the present case the issue was joined before the motion was made, so that it was competent for the plaintiff to oppose the motion, or move himself, on the ground of the convenience of wit-nesses; and, on mature deliberation, it seems to us that the construction put upon the statute by Judge HARRIS is the true and proper one. It is a construction which, at one and the same time, gives effect to all of its pro-visions, and fully satisfies the reason and spirit of its requirements. It is obvious, from a reading of the stat-ute, that the several causes for changing the place of trial are not of equal weight or importance. Some are preferred above others, and must take precedence. The place where the witnesses reside, and their convenience, is preferred to the place of residence and convenience of the defendants; and so the latter must give way to the former. If this action had been commenced in Mil-waukee county, where the defendants reside, the place of trial might have been, and, on application of either the plaintiff or defendants showing the same state of facts now shown in opposition to the motion, would have been changed to Oconto county, where the convenience of witnesses required. A construction of the statute by which its provisions are thus directly carried into effect, and the action retained and trial had in the county where the statute requires, cannot, in our judgment, be very far wrong; and we are satisfied it was no error for the court below to overrule the defendants' motion.

The other errors assigned present less difficulty. As to that with respect to the question allowed to be asked of the witness Farnsworth, whether he released any

claim he had, or any right of action he had, against *Johnson* (the defendant) for the logs, though it may have been strictly erroneous to allow the question in that form, yet the error was cured by the facts stated by witness in answer. He answered that he gave up to the plaintiff all his right, title and interest in the logs. Now, although a mere right of action for a tort is not in law assignable, yet personal property or chattels in possession of another, whether before or after conversion by the person possessed, may be assigned by the rightful owner. This principle is well settled. *Hall v. Robinson*, 4 Coms. 293; *The Brig Sarah Ann*, 2 Sumner, 206, 211; *Robinson v. Weeks*, 6 How. Pr. 161; *Root v. Bonnema*, 22 Wis. 539, 543. Inasmuch, therefore, as the witness answered that he released the logs themselves, and not any claim or right of action he had against the defendants for taking the logs, the form of the question becomes immaterial.

Another error assigned is the instruction of the court, that it was not necessary that the plaintiff should demand the logs from the defendants. This instruction, we think, was correct. There was no conflict of evidence as to the fact that the defendants sawed, sold and disposed of the logs after the resale or transfer by Farnsworth, Mears & Co. to the plaintiff. This was a conversion by the defendants of the property of the plaintiff, and no demand was necessary. If such conversion had taken place before the resale or transfer to the plaintiff, then a demand on his part might have been necessary. *Root v. Bonnema, supra.*

Another objection is founded on the statute of frauds, and the instruction of the court that no bill of sale was necessary, if the logs were given up by Farnsworth, Mears & Co. to the plaintiff, and charged to him on account. This instruction also, we think, was correct. The logs had not, at that time, been separated and delivered to Farnsworth, Mears & Co., under their pur-

chase, and it may be a matter of some doubt, whether their title was yet complete or not. But if it was, still, as the plaintiff was engaged in running the logs for the purpose of delivery when they were taken by the defendants, the possession, as between the plaintiff and Farnsworth, Mears & Co., was in the plaintiff, and no further delivery was practicable or necessary in order to take the transaction out of the statute.

Another and the last objection is, that the court refused the request of the defendants to charge the jury, that if they found, from the evidence in the action, that the logs sued for were cut on lands belonging to the defendants, under an agreement with the plaintiff that he should put them in the river for the defendants, and not otherwise, then they should find for the defendants. This instruction was inapplicable to the evidence. There was no evidence of any such special agreement with regard to the cutting of the logs, as that assumed in the instruction. The defendant *Johnson*, to whom the land had been conveyed, does not so testify. And, assuming his statement of the affair, with regard to the conveyance of the land to him, to have been correct, but which was positively contradicted by the plaintiff, *Couillard*, he still held the land only as security for the payment of the purchase-money by *Couillard* to him ; and whether *Couillard* owed him any thing or not, was one of the questions in controversy, about which the evidence was very conflicting. The jury may have found, and probably did, that *Couillard* was not indebted to him, and that the purchase-money was paid without the credit of the logs in dispute, upon the account of *Couillard* with the defendants, as claimed by them ; and if this was so, then it is very clear that the defendants could not show title to the logs, and defeat the action upon this ground. After payment of the purchase-money, the logs, as well as the land, belonged to *Couillard*, and the defendants were no more justified in taking

the logs than an entire stranger would have been. The instruction was therefore wrong for this additional reason, that it assumed that the title shown by the defendants was absolute, whereas it was conditional only, and the circumstances under which the jury were authorized to find, and might have found, that such condition had been fulfilled, and that the title of the defendants had ceased and become inoperative, were entirely omitted and withdrawn from their consideration.

Such are the objections taken by the defendants to the proceedings and judgment, and such the views of this court with respect to them. We can discover no error for which the judgment should be reversed, and consequently it must be affirmed.

*By the Court.* — Judgment affirmed.