GODKIN *v.* WEBER.

CONTRACTS—OFFER AND ACCEPTANCE— LETTERS— CONSTRUCTION.
  Letters containing an offer and acceptance cannot be con-
    strued together to form a completed contract where it is ap-
    parent from reading them that the letter containing the ac-
    ceptance is not an answer to the one containing the offer,
    but is an answer to another letter not in the record.

ON REHEARING.

STATUTE OF FRAUDS— SALE OF GOODS — PAROL CONTRACT — AC-
  CEPTANCE OF GOODS—NECESSITY.
  Where defendant, having possession of a quantity of lumber
    belonging to plaintiff, made him an oral offer for it through
    an agent of plaintiff, which, being communicated to plaintiff,
    he accepted, but defendant · thereafter performed no act
    which indicated his acceptance of the lumber, as required by
    section 9516, 3 Comp. Laws, there was no sale, notwithstand-
    ing defendant kept silence for five days before communicat-
    ing to plaintiff his refusal to buy in accordance with his
    offer. GRANT, C. J., and BLAIR and MOORE, JJ., dissenting.

Error to Wayne; Rohnert, J. Submitted November
12, 1907. (Docket No. 161.) Decided January 31, 1908.
Rehearing granted May 27, 1908; former opinion modi-
fied September 15, 1908.

Assumpsit by John Godkin against Joseph E. Weber
for goods sold and delivered. There was judgment for
plaintiff, and defendant brings error. Reversed.

*Jasper C. Gates*, for appellant.

*Lee E. Joslyn*, for appellee.

Plaintiff, a wholesale lumber dealer in Bay City, had a
conversation over the telephone with the defendant, a retail
lumber dealer in Detroit, on the evening of December 19,
1904, in regard to the purchase of certain lumber. That
conversation is immaterial, as all prior conversations and

orders were merged in the written contract afterwards made. On December 20th plaintiff wrote defendant stating what he understood the bargain to be, namely,— a sale of 130,000 feet of hemlock piece stuff [giving the dimensions], less what mill culls there may be among it, at the price of $13.50, delivered at Detroit, at the Gratiot avenue station of the Grand Trunk,— one-third to be shipped the present week, about one-third the following week, and the balance the third week; settlement to be made January 4, 1905, etc. To this defendant replied December 21st, saying that the plaintiff's understanding of the agreement was correct, except that defendant was to pay for the lumber as soon as it is unloaded, which may not be before January 4th, if the railroads delay shipment. On December 22d, plaintiff replied by letter, saying that this was satisfactory. There is no ambiguity in this contract. It contemplated there would be some mill culls mixed with the lumber shipped, and that was to be deducted. Plaintiff shipped two cars December 30th, two January 4th, and one January 5th. These five cars involve all the lumber that is in dispute in this case.

The first two cars reached Detroit on January 6th or 7th, the others not later than January 17th. The first two car loads were taken by the defendant to his yard January 7th, and one was sorted after it was unloaded from the car. The others were not sorted.

On January 7th, defendant paid plaintiff $500, and on January 28th, $200. No complaint was made as to the character of the lumber until January 21st, fourteen days after the first two cars were received, and four days after all had been received. On that day defendant wrote, stating that the lumber received ran about 35 per cent. to mill culls, that he had inspected one car showing this amount, and that the other cars ran about the same, and requesting plaintiff to advise what disposition he wished made of the culls. Defendant gave as a reason for not sooner notifying plaintiff of the character of the lumber that there was such a large amount of culls he thought he

would be obliged to have some disinterested inspector put on it, and because he had paid $500, and feared that if there was going to be an objection to the lumber on his part plaintiff might stop it, and defendant might have some trouble in getting his $500 back.

On the 23d plaintiff wrote defendant that he did not sell him any mill culls, asked to have them laid out so that he could have them examined, and that "if there are any mill culls I will not ask you to take them." On January 24th defendant wrote plaintiff that he had laid out the culls from only one car, that the other cars were all piled in together, and that the plaintiff must take the inspection on one car as a basis for settlement on the entire shipment, or they must be inspected. Subsequently, under agreement, the lumber was sorted, and the mill culls, amounting to 29,392 feet, piled by themselves.

On February 8th plaintiff went to Detroit and examined the culls. February 14th defendant wrote plaintiff acknowledging invoices for two cars. In that letter he wrote:

" We suppose this is out of the same stock as the other five cars. If so, rather than have further disputes with you over any question of grading, we will refuse same unless you consent to our laying out culls and paying for same at $9.50 per M."

On February 16th, one Ward, plaintiff's inspector, inspected the culls. He testified that defendant offered to take the culls at $9.50 per thousand, and that he communicated this to plaintiff on the same day. On the following day plaintiff wrote defendant saying:

"As regards those mill culls, left in your yard, the inspector informed me that you will not pay any more than $9.50 per M. for them, which is one dollar under the price, but if that is the most you will pay, I can only say for you to take them, as I do not wish to have them eaten up in expenses looking after them. Hoping that you will forward your check on receipt of this," etc.

On February 22d, defendant again wrote plaintiff offer-

ing $9 per thousand. On the following day plaintiff instituted this suit. Defendant with his plea interposed a notice of recoupment and set-off, consisting mainly of expenses in sorting and storing the lumber.

GRANT, C. J. (*after stating the facts*). The sole controversy in this cases arises from the mill culls. Was there a valid sale of them ? is the only important question. The original contract excluded mill culls, but contemplated that some would be mixed with the lumber. Whatever were so shipped defendant had the right to throw out. Upon notification it would have been the duty of the plaintiff to take them away. If the mill culls, as the court instructed the jury, were sufficient in quantity to justify the defendant in refusing to accept the lumber, it was his duty to promptly notify the plaintiff. He did not do so, and furnished no legal excuse for the delay. But, as the court instructed the jury, this became immaterial, except as it might affect certain expenses to which the defendant claims he was subjected, because it was subsequently agreed that the merchantable lumber contracted for should be separated from the culls, and that defendant was liable only for the merchantable lumber.

Plaintiff claims that a sale of the culls was afterwards made at $9.50 per thousand. This claim is based, — (1) upon defendant's letter of February 14th, and plaintiff's letter of the 17th. (2) Upon the proposition made by the defendant to Mr. Ward, the inspector, to pay $9.50 per thousand, by him communicated to plaintiff, plaintiff's letter of acceptance of February 17th, and defendant's retention of the goods without notice until February 22d.

Counsel for defendant insists that his letter dated February 14th referred solely to the two cars mentioned therein, and did not include the culls piled in the defendant's yard. Plaintiff's counsel contends that it did include the culls in the yard, and that plaintiff's letter of February 17th was an acceptance of the offer contained in the letter of the 14th. The court left it to the jury to deter-

mine whether the two letters included the culls in the yard
as well as those upon the two cars, and were understood
by the parties to be an offer on the part of defendant to
purchase the entire lot, and an acceptance thereof by the
plaintiff.  In this we think the court erred.  Defendant's
letter does not refer to the culls in the yard, but solely to
the culls upon the two cars.  The plaintiff's letter makes
no reference to the letter of the 14th, but appears to be in
reply to a letter of the 16th.  We must therefore hold that
plaintiff's letter of the 17th was not a reply to defendant's
letter of the 14th, and the letters do not constitute a con-
tract.  The court should have so instructed the jury.

The court also instructed the jury:

"If you find, however, that this letter of February 14th
was not for the mill culls, but that he proposed, and that
the proposition accepted by Mr. Godkin was the one that
was made to Ward when in the yard, then it would be a
completed contract for the sale of those mill culls to Mr.
Weber by Mr. Godkin, unless Mr. Weber unreasonably
delayed in notifying Mr. Godkin.  It was his duty on re-
ceipt of the letter to immediately disclose to Mr. Godkin
exactly what he, Mr. Weber, considered to be the status
of the case; if he did not do it, he would be considered in
law as having accepted Mr. Godkin's offer as binding
upon himself."

Defendant contends that this was error, and that the
alleged oral sale is void under the statute of frauds (3
Comp. Laws, § 9516), because there was no delivery or
acceptance within the meaning of the statute.  The lum-
ber was in the possession and under the control of the de-
fendant.  He had made an oral offer of purchase.  The
plaintiff wrote an acceptance of the offer.  Any further
ceremony as to the delivery would have been unnecessary
and impracticable.

Mr. Mechem says:

"Where the goods, at the time of the contract of sale, are
already in the possession of the purchaser,   *   *   *   the
nature of the delivery and receipt which will satisfy the
statute is necessarily different.  It is not necessary that

the parties should go through the idle ceremony of returning the property to the seller that he may make a new delivery to the buyer, who is then to receive it anew. * * * Whether the acts show a receipt of this nature is ordinarily a question of fact for the jury, though where the facts are not in dispute the court may determine it." 1 Mechem on Sales, § 389.

Where an oral agreement was made for the transfer of 20 hogs mingled with others, and the vendor and vendee went where the hogs were and pointed them out, and the vendor charged the vendee the purchase price on account, the hogs remaining together in the same pasture as before, in the possession and care of the vendor, it was held that there was a sufficient delivery to satisfy the statute of frauds. *Webster* v. *Anderson*, 42 Mich. 554.

The rule is thus laid down in 29 Am. & Eng. Enc. Law (2d Ed.), pp. 984, 985:

"A long and unreasonable delay in returning the goods to the seller after they have been delivered to the buyer constitutes strong evidence of acceptance, and it has been said that practically the question resolves itself into whether the buyer, within a reasonable time, has rejected the property; the question whether the buyer has failed to reject the goods within a reasonable time being one for the jury. * * *

"Where goods are sold to a buyer who is already in possession of them, the question what constitutes the requisite acceptance and receipt of the goods is one with which the courts have had considerable difficulty and have not always been in harmony. Although the facts and circumstances of each particular case are to be considered, it may be stated as a general proposition that the buyer has little more to do, if anything, than to remain in possession and claim under the contract of sale. According to some authorities the law does not require that he should go through the idle ceremony of delivering up possession to the seller and then taking back possession under the contract of sale." See authorities there cited.

Laymen of average common sense would not consider that it was necessary to go through some ceremony to constitute a delivery and acceptance under such circum-

stances. Suppose these parties had met, the defendant having the property in possession, and defendant had said to the plaintiff, "I will pay you $9.50 per thousand," and that plaintiff had replied, "I will take it," and the parties had separated, would defendant five days afterwards be permitted to say that there was no delivery or acceptance?

Where goods are delivered under a parol sale, void under the statute of frauds, it is held to be the duty of the purchaser to repudiate immediately. *Spencer* v. *Hale,* 30 Vt. 314.

Where logs had been sold and were repurchased, being in possession of the repurchaser, it was held that no written memorandum of resale was necessary. *Couillard* v. *Johnson,* 24 Wis. 533.

The court left it to the jury to determine whether the delay from February 17th to the 22d was unreasonable. In this connection it must be borne in mind that in the due course of mail a letter mailed in Detroit would reach the plaintiff in Bay City in a few hours, and that there were other speedier methods of communication.

The other assignments of error are unimportant.

For the error mentioned, the judgment is reversed, and new trial ordered.

BLAIR, MOORE, CARPENTER, and MCALVAY, JJ., concurred.

### ON REHEARING.

A detailed statement of the facts in this case will be found in the former opinion written by Chief Justice GRANT, ante, 207. The testimony, stating it most favorably to the plaintiff, may be briefly summarized as follows: On the 16th of February, 1905, there was in defendant's possession mill culls belonging to plaintiff amounting to 22,957 feet. Defendant made a verbal offer to plaintiff's agent to purchase these at $9.50 per M. This offer was communicated to plaintiff February 17th. On that day plaintiff wrote defendant, accepting the offer.

Very soon thereafter defendant informed plaintiff's agent that he would not purchase at that figure, and later, on the 22d of February, he wrote plaintiff offering to purchase at $9 per M. This last offer never was accepted. Did this evidence justify an inference of sale?

Carpenter, J. (*after stating the facts*). The important question in this case is this: Has there been a compliance with section 9516, 3 Comp. Laws? That section reads:

"No contract for the sale of any goods, wares or merchandise, for the price of fifty dollars or more, shall be valid, unless the purchaser shall accept and receive part of the goods sold, or shall give something in earnest, to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby or by some person thereunto by him lawfully authorized."

When this case was first determined by us, we decided that there was in writing nothing to indicate defendant's assent to the sale. We adhere to that determination for the reason stated in our former opinion; that is, to be specific, we hold that defendant's letter of February 14th, which it was claimed contained an offer for these culls, referred to other culls, and not to those in controversy. It is urged that the section was complied with because the goods were already in defendant's possession. We assented to this view on the former hearing. In doing this I think we failed to note—at least, I failed to note— that the statute required acceptance as well as delivery. There is in this case no evidence of acceptance. And to hold that the statute was complied with is to disregard that portion of the statute requiring acceptance. In *Duplex Safety Boiler Co.* v. *McGinness*, 64 How. Prac. (N. Y.) 99, it is said (this is quoted from the headnote, but it is correct):

"In order to constitute a delivery and acceptance of goods, something more than words are necessary; and the

fact that the goods are already in the defendant's possession under a prior understanding does not amount to a delivery or acceptance.   There must be some affirmative act of his to take the case out of the statute."

This is supported by a long line of cases.   See *Dorsey v. Pike,* 50 Hun (N. Y.), 534; *Follett Wool Co. v. Deposit Co.,* 84 App. Div. (N. Y.) 151; *Hinchman v. Lincoln,* 124 U. S. 38; *J. H. Silkman Lumber Co. v. Hunholz,* 132 Wis. 610 (11 L. R. A. [N. S.] 1186); *Lillywhite v. Devereux,* 15 M. & W. 285; *Proctor v. Jones,* 2 C. & P. 532; *Taylor v. Wakefield,* 6 El. & Bl. 765.

It is contended that *Webster v. Anderson,* 42 Mich. 554, *Couillard v. Johnson,* 24 Wis. 533, 1 Mechem on Sales, § 389, and 29 Am. & Eng. Enc. Law (2d Ed.), p. 985, are opposed to this view of the law.   We think otherwise.   In *Webster v. Anderson* and *Couillard v. Johnson* there was no question about an acceptance.   The question of delivery alone was in doubt, and therefore these authorities have no application.   It is not to be inferred from 1 Mechem on Sales, § 389, or 29 Am. & Eng. Enc. Law (2d Ed.), p. 985, that evidence of acceptance is unnecessary where the goods are in possession of the purchaser.   I quote from Mr. Mechem as follows:

" 'If it appears,' said the court in a leading case upon the subject, 'that the conduct of a defendant in dealing with goods already in his possession is wholly inconsistent with the supposition that his former possession continues unchanged, he may properly be said to have accepted and actually received such goods under a contract, so as to take the case out of the operation of the statute of frauds.' *Lillywhite v. Devereux,*" supra.

It is said in 29 Am. & Eng. Enc. Law:

"It may be stated as a general proposition that the buyer has little more to do, if anything, than to remain in possession and claim under the contract of sale."

The necessity of an acceptance is here sufficiently indicated.

It is urged that because defendant, after receiving plaintiff's letter of February 17th, delayed replying until February 22d, an inference of acceptance may thereby be drawn. In other words, it is argued that defendant was bound by the void parol contract because he did not repudiate it. This is only an indirect method of evading the statute, and it forces upon defendant the obligations of a contract contrary to the provisions of the statute. It should also be said that the record does not sustain the claim that defendant delayed until February 22d in notifying the plaintiff that he refused to accept the culls in accordance with the terms of the letter of February 17th; for it is shown by a letter of plaintiff's written February 21st that prior to that time defendant had informed plaintiff's agent that he would not purchase the culls on those terms. Out of the mill culls rejected by defendant, plaintiff's agent Ward cut out 5,424 feet of merchantable lumber, which defendant accepted and paid for as such. Plaintiff insists that this was an acceptance of the mill culls. We do not think this argument sound. This 5,424 feet was accepted and paid for upon the ground that it was not a part of the mill culls. Its acceptance had no effect upon the transfer of title of the mill culls. In my judgment, the trial court should have directed a verdict in defendant's favor.

Judgment reversed, and a new trial ordered.

MONTGOMERY, OSTRANDER, HOOKER, and McALVAY, JJ., concurred with CARPENTER, J.

GRANT, C. J. (*dissenting*). I see no occasion to retreat from my former opinion. The question, as I read the record, is not: Was the defendant bound by a void parol contract because he did not repudiate it? The question is: Was the contract, otherwise void, made valid by delivery? Under the record as I read it, defendant made a parol offer for the property already in his possession, bulky, and as to which further delivery was unnecessary and impracticable. This parol offer was

promptly communicated to plaintiff. He wrote accepting the offer, and defendant kept silence for five days. Where one having goods in his possession belonging to another makes a parol offer to buy and that parol offer is accepted, the law does not require the vendee to accept the acceptance of his offer to purchase in order to complete the sale. Remaining in possession and keeping silence for five days, when an answer, if the vendee intended repudiation, could have been made in a few minutes by telephone or a few hours by letter, are evidence of delivery and acceptance of the goods. The circumstances in this case are in my judgment sufficient to justify the finding by the jury that there was a delivery which satisfied the statute of frauds and made a valid contract.

The inspection of the culls made by plaintiff's inspector in conjunction with the defendant's inspector and the defendant's men, was made February 15th, and at that time the ends were cut off from certain culls, leaving the balance merchantable lumber. The amount of this merchantable lumber was 6,435 feet, leaving the amount of the culls 22,957. Defendant's offer to pay $9.50 per M. was made after this inspection and communicated to the plaintiff on the 16th. On the 21st of February plaintiff wrote defendant, demanding payment. The bill claimed 22,957 feet of mill culls at $9.50 per M. I am unable to find anything in that letter indicating that defendant had informed plaintiff's agent, subsequent to the time of his offer, that he would not purchase the culls on those terms. There is evidence of a refusal to purchase before that time.

BLAIR and MOORE, JJ., concurred with GRANT, C. J.