HARVE DEITRICK, Appellant, v. P. W. SINNOTT et al.,
Appellees.

FRAUDS, STATUTE OF: Personalty—Delivery. An owner of cat-
tle, seeking to enforce an oral contract of sale on which no
payment had been made, may not base *delivery* to the buyer
either:

1. On mere words of the alleged contract, when the cattle
were, at the time, in the owner's possession in the stockyards
of a distant state, or

2. On the fact that the alleged buyer received and appro-
priated to his own use the proceeds of a subsequent sale of
cattle, when such transaction was, in view of the relations of
the parties, perfectly consistent with the claim of no sale.

FRAUDS, STATUTE OF: Testimony of Adverse Party. A peti-
tion which seeks to enforce an oral contract which is within
the statute of frauds, is demurrable, unless it contains an alle-
gation that plaintiff relies on the testimony of the adverse
party to prove the contract. The Code of 1897 has not changed
this rule.

FRAUDS, STATUTE OF: Defendant as Witness. A defendant
against whom an alleged oral contract which is within the
statute of frauds is sought to be enforced, may become a wit-
ness *on his own behalf*, and testify as to the real nature of the
transaction in question, and *plaintiff will not be permitted to
contradict such testimony.*

*Appeal from Clarke District Court.*—P. C. WINTER, Judge.

OCTOBER 19, 1920.

ACTION in equity for an accounting. Decree dismissing
plaintiff's petition, and he appeals.—*Affirmed.*

*O. M. Slaymaker,* for appellant.

*McGinnis & McGinnis,* for appellees.

STEVENS, J.—I. The plaintiff and the defendants, P. W. Sinnott and H. A. Canney, reside at Osceola, Iowa, where they are each engaged in buying and shipping stock. Plaintiff and Sinnott occasionally buy and ship in partnership, as do also the defendants. The controversy involved in this case grows out of the purchase, in July, 1918, and sale of three carloads of cattle on the Chicago market. They were all purchased of one Judd, and shipped in two lots, of one and two carloads respectively. The first carload was purchased and paid for by plaintiff on July 30, 1918, by check upon the Simmons & Company bank, of Osceola; the other two loads were purchased by Sinnott and paid for by check on the same bank, as follows: $100 on July 30th, and $4,966 on August 2d. Defendant sold Sinnott a one-half interest in the first carload, and purchased a one-half interest of him in the last lot. All of the cattle were shipped in the name of Sinnott & Deitrick, to the Iowa Live Stock Commission Company, Chicago, Illinois. Canney purchased a one-half interest of Sinnott; so that the cattle were owned, one half by plaintiff, and the other half by the defendants, jointly. The first carload was sold at a net profit of $124.49, but the last lot was sold at a loss of $1,413. The last two loads arrived at the stockyards in Chicago on Saturday night, but were sold the following Tuesday. The Sunday intervening is referred to by the witnesses as the day of the "hot winds." The proceeds of the sale of both shipments were forwarded to the bank of Osceola by the commission company, and credited to Sinnott's account. The sales account was, however, made out to Sinnott & Deitrick.

Plaintiff brings this action for an accounting, and asks judgment for the amount found to be due him. He alleged in his petition that, on Monday afternoon, and while the cattle were in the stockyards at Chicago, he orally sold his interest therein to 'the defendants, at an agreed price per hundred. Defendants filed separate answers, denying the allegations of plaintiff's petition, but admitting the purchase and shipment of the cattle, and tendering to him the amount claimed by them to be due the plaintiff. The court

found that no part of the purchase price was paid, and that no delivery of the cattle was made to Canney, and that, therefore, the attempted sale by plaintiff falls within the statute of frauds.

The defendant Canney, with whom it is claimed the oral contract of purchase was made, called as a witness in his own behalf, admitted that he had a conversation with plaintiff at the time claimed, during which plaintiff said that he believed he had too many cattle on the market that day; that defendant then, in a spirit of banter or fun, proposed to buy plaintiff's interest in the cattle, and that, after some dickering as to price, defendant told him that he would take them; but that he did not intend at the time to buy an interest in the cattle; and that plaintiff knew he did not. As indicated, no general partnership then existed between plaintiff and Sinnott, or between Sinnott and Canney. All partnership transactions between them involved only occasional specific purchases and sales of stock.

It is conceded by the defendants that, after the cattle in question were purchased by plaintiff and Sinnott, Canney acquired a share in the half interest of Sinnott; but he was in no sense a partner with plaintiff in the transaction. It is further conceded that no money was paid to plaintiff for his interest in the cattle, and that there was no actual delivery thereof to Canney, or to Sinnott & Canney. Appellant, however, contends that the cattle were, at the time of the alleged sale, in the possession of defendants; that full dominion and control of the property was turned over to and assumed by them; that they received and appropriated the proceeds of the sale to their own use; and that, therefore, the statute was complied with. Many decisions from other jurisdictions holding that, where personal property is in possession of the buyer at the time of the sale, it is unnecessary for the owner to resume possession thereof in order that actual delivery may be made, are cited. *Wilson v. Hotchkiss,* 171 Cal. 617 (154 Pac. 1); *Godkin v. Weber,* 154 Mich. 207 (114 N. W. 924); *Smith v. Bryan,* 5 Md. 141;

1. FRAUDS, STATUTE OF: personalty: delivery.

*Reinhart v. Gregg,* 8 Wash. 191 (35 Pac. 1075); *Snider v. Thrall,* 56 Wis. 674 (14 N. W. 814). These cases, however, hold that, where the property is in the possession of the buyer, his conduct touching the same must thereafter be inconsistent with his previous possession as bailee or agent of the seller. *Charlotte H. & N. R. Co. v. Burwell,* 56 Fla. 217 (48 So. 213); *Young v. Ingalsbe,* 208 N. Y. 503 (102 N. E. 590); *Wilson v. Hotchkiss,* supra; *Silkman Lbr. Co. v. Hunholz,* 132 Wis. 610 (112 N. W. 1081). Evidence showing acts of dominion and control thereover by the purchaser, inconsistent with the facts upon which his prior possession was based, would be sufficient for that purpose. *Wilson v. Hotchkiss,* supra.

Manifestly, actual delivery of the cattle by plaintiff to Canney, or of his interest therein, could not have been made at the time of the transaction. The parties were in Osceola, and the cattle were in the stockyards at Chicago, consigned to the Iowa Live Stock Commission Company for sale. Mere words between them at the time of the transaction, which are a part thereof, at the time of the alleged sale, could not constitute or effect a delivery of the property. *Silkman Lbr. Co. v. Hunholz,* supra; *Godkin v. Weber,* supra; *Smith & Son v. Bloom,* 159 Iowa 592.

The evidence does not sustain appellant's claim that the cattle were, at the time of the alleged sale, in the possession of the buyer. The evidence is not quite clear as to the extent of the partnership relations between the defendants generally, but they apparently had an understanding that they would share profits and losses in purchases agreed upon, or in sales of stock bought by Canney and approved by Sinnott. Sinnott testified that he knew nothing about the transaction between plaintiff and his codefendant until after the sale of the cattle, and the receipt by him of the proceeds arising therefrom. In this he is not contradicted. The cattle, at the time of the transaction, as stated, were in the stockyards at Chicago, for sale by the agent of the shipper, who was Sinnott & Deitrick. No affirmative act which could, upon any theory, amount to a delivery is

shown in the evidence. It is true that we held, in *Smith & Son v. Bloom,* supra, which involved a controversy over a quantity of lambs, over which plaintiff had no control, picked out by the defendant, weighed and placed in a separate pen, with the knowledge of Bloom, that there was a delivery; but that differs materially from the case at bar. In this case, there was no surrender to defendant of possession, dominion, or control over the cattle.

But it is further contended by counsel for appellant that the defendants received and appropriated the proceeds of the sale of the cattle, thereby accepting them, and that delivery may be inferred therefrom. No relationship between the receipt and deposit of the proceeds of the sale in the bank by Sinnott to his own credit, and the transaction between plaintiff and Canney, was disclosed.

On July 30th, the defendant Sinnott wrote a letter, or card, to the Iowa Live Stock Commission Company, at Chicago, stating that he was shipping one of three carloads of cattle, and that same were billed out in the name of Sinnott & Deitrick, and requesting that the proceeds of the sale be forwarded to the Simmons & Company Bank. Explaining his reasons for writing this letter, Sinnott testified as follows:

"As to how I came to write that, Mr. Deitrick suggested, when we were coming home, at the time we were talking about Mr. Canney going in, that he had never shipped any cattle to this company, and he says, 'You had better write to them and tell them to send the money to Simmons & Company.' Exhibit C which you hand to me is the card which I wrote. It seems to me that we had the returns for the first load when that card was written. I had been shipping other cattle to them before that."

As will be observed, this letter was written before the last shipment of cattle was made. Evidently, the commission company made remittance to the bank in compliance with the request contained in the letter referred to. A letter from the commission company, explaining how the remittance came to be made to Sinnott, was introduced in

evidence by the plaintiff, and attention is directed to the following extract therefrom:

"Our bookkeeper naturally supposed that these cattle belonged to Mr. Sinnott, and, from this letter, we would take it that they were billed Sinnott & Deitrick, in order to get a pass, or for some other reason."

Sinnott & Deitrick did not have an account in the Simmons & Company Bank, although each kept separate accounts therewith. The remittance was payable to Sinnott, and naturally was placed to his credit, when received at the bank. Both Sinnott and plaintiff appear to have been financially responsible and personally friendly, and the method of handling the proceeds of the sale was probably not objectionable to plaintiff. The record, in our opinion, does not disclose facts from which delivery may be inferred.

II. Counsel for appellant further argues that, whether there was a sufficient delivery of the property to take the contract out of the statute of frauds or not, it was fully established by the testimony of the defendant Canney. The following provisions of the Code have a material bearing upon this proposition:

2. FRAUDS. STATUTE OF: testimony of adverse party.

"Section 4627. The above regulations, relating merely to the proof of contracts, shall not prevent the enforcement of those not denied in the pleadings, except in cases when the contract is sought to be enforced, or damages recovered for the breach thereof, against some person other than him who made it. .

"Section 4628. The oral evidence of the maker against whom the unwritten contract is sought to be enforced shall be competent to establish the same."

Prior to the enactment of Section 4628, supra, in its present form, we held that, if the plaintiff desired to rely upon the testimony of the adverse party to prove an oral contract, he must so allege in his petition. *Babcock v. Meek*, 45 Iowa 137. Section 3667 of the Code of 1873, which was in force when the decision in the above-cited case was

announced, corresponds to the section quoted above, and was as follows:

"Nothing in the above provisions shall prevent the party himself against whom the unwritten contract is sought to be enforced, from being called as a witness by the opposite party, nor his oral testimony from being evidence."

Plaintiff did not allege in his petition that he relied upon the testimony of the defendant to establish the contract, and counsel contends that, under the present statute, this is unnecessary. We fail to see, however, wherein the change in the language of the statute alters its effect. Section 4625 of the Code of 1897 provides:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:

"1. Those in relation to the sale of personal property, when no part of the property is delivered and no part of the price is paid; * * *"

This statute does not, however, render an oral contract for the sale of personal property, where no part of the purchase price is paid and no part of the property delivered, void. *Berryhill v. Jones*, 35 Iowa 335; *Merchant v. O'Rourke*, 111 Iowa 351; *Nebraska B. S. & L. Co. v. Conway & Sons*, 127 Iowa 237. If the defendant fails, in his answer, to deny the contract, or if he admits the same, it is enforcible, except when the plaintiff seeks to enforce the same, or to recover damages for a breach thereof against some other person than the party making it. Another exception to Section 4625 is provided by Section 4628, which makes the oral evidence of the maker against whom it is sought to enforce the contract competent to establish the same. If plaintiff would avoid the statute of frauds, in an action upon an oral contract for the sale of personal property, he must allege such facts as will effect that purpose; and, if such necessary allegations are omitted, the petition is demurrable. *Babcock v. Meek*, supra; *Burden v. Knight*, 82 Iowa 584; *Marks v. McGookin*, 127 Iowa 716. Further, it

is the settled rule in this state that, if plaintiff relies upon the testimony of the adverse party to establish the contract, the proof thereof is limited to his testimony, and can neither be supplemented nor contradicted by the testimony of other witnesses. *Auter v. Miller,* 18 Iowa 405; *Thorn & Stein v. Moore,* 21 Iowa 285; *Mighell v. Dougherty,* 86 Iowa 480; *Burnside & Co. v. Rawson & Co.,* 37 Iowa 639; *Johnson v. Holland,* 124 Iowa 157; *Marks v. McGookin,* supra; *Olsen v. Peregoy & Moore Co.,* 182 Iowa 889.

Manifestly, Section 4628 was enacted for the benefit of the party seeking the enforcement of an oral contract, and not for the benefit of a party opposing enforcement thereof.

3. FRAUDS, STATUTE OF: defendant as witness.

Doubtless, the defendant is a competent witness, even when called in his own behalf, to establish the oral contract sought to be enforced against him; but the enactment of Section 4628 was wholly unnecessary, in view of the provisions of Section 4627, for the purpose of authorizing the defendant to testify thereto. If, under said statute, he failed, in his answer, to deny the contract, or specifically admitted the same, it will be enforced, except where a third party is involved. The defendant Canney availed himself of his privilege, and became a witness in his own behalf, and testified fully concerning the transaction in question. The only question is whether his testimony establishes the contract. Defendant admitted that he had a conversation with plaintiff in which the purchase of his interest in the cattle was discussed; but, in explanation thereof, testified that what was said by him was in a spirit of banter and fun; that he at no time intended to purchase the cattle, either for himself or for Canney & Sinnott. He also testified that the conversation was had on the Monday following the Sunday of the "hot winds," when, as is generally known, the temperature reached 110 degrees in the shade, and possibly, in some parts of the state, 112 or 113 degrees. Plaintiff was regretting that he had so many cattle on the market, and defendant, according to his testimony, jokingly said he would buy the cattle; but he testifies that he in fact had no

intention of doing so, and that plaintiff must have known he did not. It is true that a party cannot avoid a contract upon the ground that he was merely jesting, if his conduct and words were such as to warrant a reasonable person in believing he was in earnest. The testimony of the defendant, under all the holdings of this court, upon the question of the oral contract, was conclusive, and the court cannot say that he is not telling the truth about the matter, and that he intended to purchase the cattle. There was no delivery of a part of the property, nor the payment of any part of the purchase price; and Sinnott testified that he had no knowledge of the transaction until informed by plaintiff, when they came to settle, some days later. Testimony tending to contradict defendant's claim that the conversation with plaintiff was merely a joke, and not a serious proposition, was offered by plaintiff in rebuttal; but testimony was inadmissible, either to supplement or contradict that of the defendant as to the contract. The provision of the statute quoted goes no further than to make the oral evidence of the maker competent to establish the alleged unwritten contract. It follows that the judgment and decree of the court below must be and are—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.