BROWN v. SEAL PEEL, INC.

1. SALES—ACCEPTANCE OF OFFER—SILENCE—INACTION.
   Silence or inaction does not amount to an acceptance of an oral offer to sell (CL 1948, § 440.4).

2. SAME—ACCEPTANCE OF OFFER—STATUTE OF FRAUDS.
   The fact that goods are already in a defendant's possession under a prior understanding does not amount to a delivery or acceptance of an offer to sell them as there must be some affirmative act of such defendant to take the case out of the statute (CL 1948, § 440.4).

3. SAME—OFFER TO SELL—ACCEPTANCE—EVIDENCE.
   Admitted use by defendant of some immersion heaters of which it had possession at the time plaintiff offered to sell them to defendant together with their inclusion in defendant's inventory *held*, to constitute a sufficient showing of affirmative action on the part of defendant to justify finding of acceptance of plaintiff's offer (CL 1948, § 440.4).

4. SAME—OFFER TO SELL—USE OF HEATERS AFTER REJECTION—ACCEPTANCE.
   Use by defendant of immersion heaters after its claimed rejection of them *held*, to have waived rejection and to have constituted evidence of acceptance of plaintiff's offer to sell them (CL 1948, § 440.4).

Appeal from Wayne; Murphy (Thomas J.), J. Submitted June 4, 1953. (Docket No. 39, Calendar No. 45,097.) Decided October 5, 1953.

Assumpsit by James A. Brown, doing business as Oakland Metal Fabricators, against Seal Peel, Inc.,

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 12 Am Jur, Contracts §§ 22, 40; 46 Am Jur, Sales §§ 48, 50.
[1–4] Effect of delay of principal in disapproving or rejecting orders for goods taken by agent subject to approval. 7 ALR 1686.

a New York Corporation, for money due. Set-off and recoupment by defendant against plaintiff for money due. Judgment for plaintiff. Defendant appeals. Affirmed.

*Sempliner, Dewey & Stanton* and *Frederick G. Dewey, Thomas L. Poindexter* and *John R. Hocking,* for plaintiff.

*Posner & Posner,* for defendant.

ADAMS, J. This is an appeal from a judgment of the Wayne county circuit court in an action for the recovery of the purchase price of 112 immersion heaters.

James A. Brown, plaintiff and appellee, claims to have sold the heaters to Seal Peel, Inc., defendant and appellant, for the sum of $1,456. The defendant denies liability on the ground that there was no acceptance of the heaters and that consequently recovery is barred under the statute of frauds. Plaintiff had judgment in the circuit court and defendant appeals.

Other matters of dispute were involved in the original trial of the case, but the only issue on this appeal is the question of whether, as a matter of law, there was an acceptance of the heaters on the part of the defendant that would satisfy the statute of frauds, it being conceded that nothing has been paid to plaintiff and that the purchase was not evidenced by writing. The pertinent section of the statute relied upon as a defense in this action provides:

"Sec. 4.     *     *     *

"(1) A contract to sell or a sale of any goods or choses in action of the value of 100 dollars or upwards shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually

receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf. * * *

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods expresses by words or conduct his assent to becoming the owner of those specific goods." CL 1948, § 440.4 (Stat Ann § 19.244).

The facts are disputed but appear from the record to be substantially as follows.

Plaintiff, a steel fabricator, rented space in defendant's factory. Defendant manufactures plastic packaging products and dipping tanks for plastic compounds. From late 1945 until the summer of 1948 plaintiff assembled dipping tanks for the defendant and in connection with that work purchased a number of immersion heaters to be used in the tanks. In November of 1947 defendant notified plaintiff that it needed the space leased to him and asked him to move. Plaintiff was unable to move immediately but eventually built his own building and moved from defendant's factory on June 22, 1948.

On several occasions between November and the date of his moving plaintiff discussed the sale of the heaters with an officer of the defendant corporation. Plaintiff says that he insisted that defendant buy the unused heaters and that defendant, through its officer, agreed to purchase and pay for them before plaintiff moved. Defendant, however, insists that plaintiff was told that the purchase would be made if defendant was financially able to pay for the heaters, but that at no time was the corporation in financial condition to make the purchase. In any event, plaintiff and one of defendant's employees inspected and

counted the heaters and they were left in defendant's factory when plaintiff moved.

On May 29, 1948, about 1 month before he moved, plaintiff delivered an invoice to the defendant for the purchase price of the heaters. Thereafter in June, July and August plaintiff billed defendant for the heaters along with other items owed. Although plaintiff and defendant occupied the same premises for a part of that time and were engaged in many interrelated activities, defendant said nothing and made no objection to the billing.

After plaintiff had moved from the premises, he had need for 6 of the heaters and was permitted to take them from defendant's premises upon signing a receipt for them. Thereafter, he credited the purchase price of the 6 heaters on defendant's indebtedness to him.

Defendant did not pay for the heaters and on August 21, 1948, plaintiff instituted suit. On September 2d, following, defendant, through one of its officers, wrote to plaintiff disclaiming ownership of the heaters and requested him to remove them from defendant's premises. Thereafter defendant used some of them for its own purposes. Here again the facts are in dispute, but it appears certain that 2 of the heaters were used at or about the time suit was started and at least 4 were utilized by defendant in 1949. Plaintiff offered testimony through an employee that substantially all of the heaters were inventoried by defendant as assets in the year 1948. In 1949 defendant's inventory listed 6 of the heaters in its assets. Just prior to the trial of the case in May of 1950, an inspection by the parties disclosed 89 heaters remaining in defendant's possession. The disposition of 23 of the 112 heaters originally left with defendant was unexplained except for the 6 released to plaintiff and the few admittedly used by defendant.

It is defendant's contention that while it had possession of the heaters, it at no time took any action of an affirmative nature which could be construed as acceptance. It rightfully says that silence or inaction does not amount to an acceptance of an oral offer to sell.

" 'In order to constitute a delivery and acceptance of goods, something more than words are necessary; and the fact that the goods are already in the defendant's possession under a prior understanding does not amount to a delivery or acceptance. There must be some affirmative act of his to take the case out of the statute.' " *Duplex Safety Boiler Co.* v. *McGinness* (syllabus), 64 How Pr (NY) 99, as quoted with approval in *Godkin* v. *Weber,* 154 Mich 207 (20 LRA NS 498).

The question here, then, is whether testimony was presented from which the trial judge could find that, as a matter of law, defendant accepted the heaters by affirmative acts of domination and control.

Defendant inspected and counted the heaters and then retained possession of them without protest at the invoice and monthly billings. It required plaintiff to sign a receipt when he asked for the return of 6 heaters. It inventoried some of the heaters as a part of its assets in the years 1948 and 1949. It admitted having used several of the heaters and could not explain the disposition of several more, although it was conceded that defendant at all times had them in its possession after plaintiff moved.

We are of the opinion that these facts taken as a whole, and particularly the admitted use of some of the heaters together with their inclusion in defendant's inventory, constituted a sufficient showing of affirmative action on the part of defendant from which the court was justified in finding an acceptance of plaintiff's offer to sell.

Defendant argues, however, that testimony as to use of the heaters after suit was started was improperly considered for the reason that such use, if it occurred, indicated a conversion rather than an acceptance of plaintiff's offer. We are not in accord with that position. Defendant offered in evidence and relied upon a letter of September 2, 1948, delivered some 10 days after this suit had been started in which it disclaimed ownership of the heaters and requested plaintiff to remove them from its premises. It was quite proper thereafter for plaintiff to submit testimony showing defendant's subsequent use of the heaters as indicative of a waiver of the rejection set forth in the letter of September 2d. *Matchless Electric Co.* v. *Morley Brothers,* 252 Mich 144.

Defendant's use of the heaters was an affirmative act of domination and control, indicative of its acceptance of plaintiff's offer to sell and was not consistent with its earlier rejection. The judgment is affirmed, costs to appellees.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.

BOYLES, J., did not sit.