## Porter *v.* Graves.

1. The declaration in an action against A., B., and C., to recover the price of a saw-mill sold to them, alleges that they were, at the time of the sale, partners in the business of sawing and manufacturing lumber and timber, and of procuring, owning, and operating a saw-mill for that purpose at a designated place. B., who alone appeared or was served with process, admitted in his answer that he and A. and U. were interested together in the business of sawing and manufacturing lumber at the time mentioned, and "contemplated and intended to procure by lease or purchase, or erect, a saw-mill" at said place. It was proved that the mill at the time of the sale was in their possession. *Held,* that an instruction to the jury that the partnership was conceded was not erroneous.

2. *Quære,* Can a party who buys property at a public sale, to perfect his previous private purchase thereof, have the sale vacated on the ground that it was contrary to law and public policy; or, after having received and used the property, can he, when sued for the purchase-money, set up such a defence.

3. The court in this case properly left it to the jury to determine whether the defendant had possession of the property pursuant to the sale.

Error to the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

*Mr. Henry J. Scudder* for the plaintiff in error.

*Mr. Francis Kernan, contra.*

Mr. Justice Miller delivered the opinion of the court.

This action was commenced by Jennie L. Graves in the Supreme Court of New York, and was, on the application of Porter, removed into the Circuit Court of the United States.

It was brought to recover the purchase price of a portable saw-mill, which she, acting as administratrix of Cyrus Graves, deceased, alleged she had sold to J. Morton Poole, William T. Porter, and W. G. Norwood, who were at the time partners in the business of sawing and manufacturing lumber and timber, and of procuring, owning, and operating a saw-mill for that purpose, at or near Homerville, Ga. Though all the partners were sued, Porter only appeared or was served. His answer raised several issues, which were submitted to a jury under the charge of the court. The exceptions to this charge, and to the refusal to grant the instructions prayed by

his counsel; with some exceptions in regard to evidence, constitute the errors on which he relies to reverse the judgment in favor of the plaintiff.

The evidence tended to show that the plaintiff, who resided in New York, made a visit to Georgia, and while there had negotiations with Norwood concerning the sale of the sawmill; that her right to sell without an order of the probate court of the proper county being considered doubtful, Norwood said that if she would get the necessary authority to sell he would, for the firm of J. Morton Poole & Co., give $5,000 for the mill; that, having been duly appointed administratrix of the estate of the deceased by the surrogate of Cortland County, New York, she procured an order of sale from the probate judge of the county of Georgia, in which the mill was situated; and that after a due advertisement the mill was sold to Norwood, as one of the partners of J. Morton Poole & Co., for $5,000.

The first point we shall examine relates to the existence of this partnership. The judge, in his charge to the jury, said that this was conceded by the parties. To this an exception was taken at the time.

We have already given the language of the declaration alleging the existence of this partnership. The answer of Porter on that subject is as follows: " And defendant admits that he and the defendants Poole and Norwood were interested together in the business of sawing and manufacturing lumber at the time mentioned in the complaint, and contemplated and intended to procure by lease or purchase, or erect, a saw-mill in the neighborhood of Homerville, aforesaid; but said defendant denies that the defendants or either of them applied to the plaintiff to purchase the saw-mill described in the complaint, and alleged to have been the personal property of said Cyrus Graves in his lifetime, or to buy any personal property."

We think this is a concession or admission of the alleged partnership; and when it is further proved without contradiction that the mill, at the time of sale, was in the possession and use of those gentlemen, the instruction of the court was justified.

Poole and Porter resided in Delaware, and Norwood was a

citizen of North Carolina. In a letter dated Wilmington, Delaware, and signed J. Morton Poole & Co., written to Mrs. Graves, in Cortland County, before she went to Georgia, in which the subject of the purchase and price of the mill and her power to sell it are considered, it is said: "We do not think your price is unreasonable, and though Mr. Norwood is a partner and must be consulted, we say now, as Mr. Pusey said to you personally, that we are the responsible parties in the concern and control all the decisions." This is relied on to show the error of the court in the statement that the existence of the partnership was conceded. But as the statement of this letter is positive that Norwood was a partner, and as the partnership was then negotiating for the purchase of this mill, we are of opinion that it proves the soundness of the charge on that point. The effect of private arrangements between the partners as to the relative influence and responsibility of each in deciding questions arising in the course of their business is a very different thing from disproving the existence of the partnership.

Another point on which error is assigned arises out of instructions asked by the defendant as to the validity of the sale.

It was in evidence that, by correspondence and otherwise between Mrs. Graves and the defendants, she had agreed that she would sell the mill to them for $5,000, which they did not think too much. But it was found necessary that she should proceed in the sale according to the laws of Georgia, and she accordingly went there and obtained from the probate court an order of sale. While this was going on she had several interviews with Norwood, who was then running the mill under some arrangement with parties who had leased it from her intestate. The advertisement states that the mill was to be sold to perfect a contract for sale to J. Morton Poole & Co., and it was so announced at the time of sale by the auctioneer. On this evidence the defendant prayed the court to instruct the jury as follows: —

"That the attempted sale at public outcry to perfect a previous private sale is contrary to the law and public policy of the State of Georgia, and therefore void.

"That the private sale of the property in question being illegal, no concerted attempt by the parties thereto to validate it by the forms of a public sale under an order of the ordinary can be effectual.

"No agreement of the parties or united request on their part to secure a formal compliance with the law in aid of a previous illegal private sale will render the latter valid.

"The formal public sale of the mill made expressly to perfect a title to the same to the defendants, in accordance with the terms of a private sale made of said property to them, is a mere form and an evasion of the statute, and hence illegal."

All these requests were refused.

That they were founded on a sound general principle is undeniable. When the law requires a sale of property, real or personal, to be made at public auction, after due notice, it is for the purpose of inviting competition among bidders that the highest price may be obtained for what is sold. To make a private bargain beforehand between the party who wishes to buy and the person authorized to sell, as to the price and other incidents of the contract, and then invoke the forms of a public sale with competition to give effect to the private bargain is a course of procedure well calculated to defeat the purpose for which the public sale is required. There can be no doubt that, at the instance of the heirs, devisees, or creditors interested in having the property bring its full value, such a sale would be set aside, either by a court of chancery, if it were real estate, or by the probate court having jurisdiction.

But it may be doubted whether this may be done at the instance of one who was purchaser at both the public and private sale. And it is still more questionable whether such purchaser, after having received and used the personal property for a long time, can set up such a defence to a suit for the purchase-money.

Such was the case here. As it is not clear from the evidence that there was a private-contract of sale, and as the defendants bid what the jury have found to be a fair price, took the mill and used it afterwards as long as its use was profitable, and have never returned it to the plaintiff, we think

the court was justified in refusing the instructions asked by them on this point. See *Nutting* v. *Thomason*, 46 Ga. 34.

Another point raised by Porter is, that the sale was void under the Statute of Frauds, because no memorandum in writing was signed by the party charged.

To this it is answered that the defendants took possession of the mill under the sale, and thus brought the case within the exception of the statute. This is denied, and the possession of the defendants is alleged to be a mere continuation of that which they had at the time of the sale under the former lessee.

But the sale took place at the mill. Norwood, the man who bid it off, was then in possession. It nowhere appears that after this he paid any money or acknowledged any relation to the former lessee. The court left it to the jury to say whether he had possession under the sale, and we think this was right.

It is insisted that the mill was real estate, and no title passed to defendants by the sale, as no deed was made, and no title was in the plaintiff to the land on which it was situated. It was what is known as a portable saw-mill, capable, as the name implies, of being removed from one locality to another, as the exhaustion of the timber by use of the mill required. It was properly left to the jury, under sound instructions, to say what the character of the mill in that respect was, and of this plaintiff here cannot complain.

Several errors are assigned on exceptions to the ruling of the court in regard to the admission of evidence. We have examined these carefully, and find no error in them. We cannot, in the pressure of the business of the court, give our reasons for this in detail.

*Judgment affirmed.*