Appeal from Second District

JAMES MACK CO. v. BEAR RIVER MILLING CO.

No. 4108.   Decided July 2, 1924.   (227 Pac. 1033.)

FRAUDS, STATUTE OF—SELLER'S EXTENSION OF TIME TO BUYER TO PAY FOR WHEAT HELD TO SHOW BUYER'S ACCEPTANCE AND TO TAKE CASE OUT OF STATUTE.   Seller's extension of time within which warehouseman could pay for wheat previously sold under oral contract, *held* to show acceptance by buyer in possession, taking oral sale out of statute of frauds (Comp. Laws 1917, § 5113).

Appeal from District Court, Second District, Box Elder County; *M. C. Harris*, Judge.

Action by the James Mack Company against the Bear River Milling Company.   Judgment for defendant, and plaintiff appeals.

REVERSED, with directions.

*DeVine, Howell, Stine & Gwilliam,* of Ogden, for appellant.

*LeRoy B. Young* and *B. C. Call,* both of Brigham City, for respondent.

THURMAN, J.

It is alleged in the complaint that on September 1, 1920, plaintiff sold and delivered to defendant 592.10 bushels of wheat at 2.10 per bushel, amounting to $1,243.40, and that the same became due on said date; that no part of said amount had been paid, although demand had been made therefor.   Judgment is prayed for said amount, with interest.

Defendant denies the allegation as to the sale and delivery, but admits the nonpayment.   Further answering as an affirmative defense, it alleges that in July, 1920, one Le Grande Hunsaker delivered to defendant a large quantity of wheat to be stored with defendant at the agreed price of one cent

per bushel per month until sold; that defendant issued to Hunsaker a receipt therefor, and that he still retains the same. Defendant alleges upon its information and belief that plaintiff has some interest in the land upon which the wheat was raised, and also some interest in the wheat, but denies any knowledge as to the quantity of said interest. Defendant further alleges that it at all times has been ready and still is ready to deliver said wheat upon surrender of said receipt and payment of reasonable charges for storing the wheat; that defendant claims no interest in the wheat except as warehouseman; and alleges that at no time did it purchase said wheat, or any part thereof, nor did it know the quantity thereof, if any, owned by the plaintiff. It prays to be dismissed with its costs.

At the commencement of the trial defendant, over plaintiff's objection, was granted leave to amend its answer by pleading the statute of frauds. Comp. Laws Utah 1917, § 5113.

The case was tried to the court without a jury. Findings and conclusions were made in favor of defendant. Judgment was entered in accordance therewith, from which judgment plaintiff appeals.

The material findings and conclusions are as follows:

"(3) That during the year 1920 the plaintiff was the owner of certain farm premises located near the place of business of this defendant, which said premises were leased to one Le Grande Hunsaker, who had growing thereon a crop of grain upon a share basis, and that on or about the 27th, 28th, and 29th days of July, 1920, said Le Grande Hunsaker delivered to defendant company all of said grain so grown and produced upon said premises for storage purposes, and that this defendant issued to said Le Grande Hunsaker a receipt or waybill for said grain. That one-third of said grain belonged to plaintiff at said time, all of which defendant well knew. That defendant thereupon placed the grain in a storage mill and elevator building of the defendant on the premises of the defendant and has ever since said time held an equal amount of grain in storage subject to the order of plaintiff, wherein defendant agreed to store the same until sold.

"(4) The court further finds that on or about the 1st day of September, 1920, plaintiff and the defendant entered into an oral agreement wherein the defendant purchased from the plaintiff the

Appeal from Second District

share of grain belonging to the plaintiff, consisting of 592.10 bushels of wheat held in storage, as aforesaid, by this defendant, at the agreed price of $2.10 per bushel, making a total amount of $1,243.41, which price it was then and there agreed was to be paid by the defendant to the plaintiff on or about the 15th day of September, 1920, and that on or about said 15th day of September, 1920, the defendant requested of the plaintiff an extension of the time of payment, and promised and agreed to pay the plaintiff the aforesaid purchase price within the period of a week or two weeks after September 15, 1920, to which extension of time plaintiff agreed.

"(5)  The court further finds that no note or memorandum in writing signed by this defendant of said contract was ever made but that the same was wholly an oral contract, and that the defendant made no payments of the purchase price or any part thereof, nor gave anything in earnest to the plaintiff to bind said contract.

"(6)  The court further finds that the defendant did not accept or receive said grain, or any part thereof, pursuant to said oral contract of sale, nor did defendant do any act evidencing any intention on its part to accept or receive said grain pursuant to said oral contract, or make any change whatsoever in the possession of said wheat, but, on the other hand that this defendant at all times has been ready and has repeatedly offered and is now ready to deliver up to the plaintiff the said wheat, and the whole thereof, and for that reason the court finds the said contract is void and unenforceable pursuant to section 5113 of the Compiled Laws of Utah, 1917.

"As conclusions of law from the foregoing facts the court now finds:

"That by reason of the statute of frauds aforesaid the plaintiff cannot recover in this case, and that the defendant is entitled to judgment dismissing said complaint and for no cause of action. Let judgment be entered accordingly."

The statute of frauds involved (Comp. Laws 1917, § 5113) reads:

"1.  A contract to sell or a sale of any goods or choses in action of the value of $500 or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf.

"2.  The provisions of this section apply to every such contract

or sale, notwithstanding that the goods may be intended to be de-
livered at some future time, or may not at the time of such con-
tract, or sale be actually made, procured, or provided, or fit or
ready for delivery, or some act may be requisite for the making
or completing thereof, or rendering the same fit for delivery; but
if the goods are to be manufactured by the seller especially for the
buyer and are not suitable for sale to others in the ordinary
course of the seller's business, the provisions of this section shall
not apply.

"3. There is an acceptance of goods within the meaning of
this section when the buyer, either before or after delivery of
the goods, expresses by words or conduct his assent to becoming
the owner of those specific goods."

No serious controversy is made as to the validity of the
findings, except finding No. 6, which is vigorously challenged
as contrary to both law and the evidence, especially that por-
tion to the effect that defendant did not accept or receive
said grain pursuant to said contract of sale nor did any act
evidencing an intention on its part to accept or receive said
grain pursuant to said oral contract of sale.

These findings, together with the conclusions, constitute
the nub of the controversy presented by this appeal. The
portions of finding No. 6, to which we have referred, when
compared with the other findings as a whole, are more in
the nature of conclusions of law than of findings of fact.

In finding No. 4 the court found expressly that on or about
September 1, 1920, defendant by oral agreement purchased
the wheat of plaintiff at the agreed price of $2.10 per bushel,
amounting in all to the sum of $1,243.41. So that there is
no question here as to whether or not there was a sale. The
only question is: Was it such a sale as is enforceable under
the statute of frauds pleaded by defendant and upon which
the court based its conclusion and judgment? In view of
this finding of the court and the conclusion reached, it is
manifest that the decision of the court turned solely upon
the question as to what constitutes accepting and receiving
goods in contemplation of the statute, where the goods at
the time of the sale are in possession of the vendee, as in the
instant case. Here there was no memorandum of the sale
in writing, nor anything given in earnest to bind the contract.

The amount involved exceeded $500, so that the contract was within the statute unless the buyer accepted and actually received the wheat, or a part thereof, within the meaning of the statute in question.

The meaning of the terms "accept" and "actually receive" in contemplation of the statute are of the first importance in determining the issues involved. The authorities generally agree that these terms, although ordinarily synonymous, do not necessarily mean the same thing in the statute of frauds. Tiedeman on Sales, § 66. "Receive" seems to imply taking into possession by the buyer, while "accept" means an assumption of ownership on the part of the buyer, treating the goods as his own. In 27 C. J. at page 242, the author says:

"The expression in the statute, 'buyer shall accept and actually receive," undoubtedly means that there must be a surrender by the seller of all dominion and control over the thing sold, and an acceptance and receipt by the buyer with intent to appropriate it absolutely as his own. It must be of such a character as to take unequivocally the property from any control over it by the seller and place it under the absolute and exclusive dominion of the buyer. The receipt which is required by the statute is in general the taking by the buyer of actual control of the goods after their delivery by the seller. The acceptance required by the statute is some act or conduct by the buyer manifesting an intention to appropriate the property to his own use."

In the case at bar, the wheat being in possession of the buyer at the time of the purchase, manual delivery was impracticable and unnecessary, and therefore was not required. It does not follow, however, that, because the buyer was in possession, and for that reason manual delivery was not required, therefore the terms "accept" and "actually receive" are of no importance. Something besides being already in possession at the time of the sale is necessary to distinguish the character of the possession. In this case, for instance, at the time of the sale defendant held the wheat in the character of bailee. In order to take the contract out of the statute of frauds something must occur independent of the oral agreement to show that the character of bailee was converted

into that of vendee, and that he retained the goods in that capacity.

In discussing the question of acceptance and receipt of goods as contemplated by the statute, 27 C. J. at pages 243 and 244, reads:

"Except as otherwise provided by statute, as a general rule mere words are not sufficient to establish such a receipt and acceptance as will take an oral contract out of the statute. There must be established the performance of a corporeal act which, independent of the mere words uttered at the time, clearly indicates that the buyer accepts and receives the property or some part thereof. Such acts must be clear and unequivocal. But this rule is not enforced unreasonably, and, where the circumstances of the case and the nature of the property are such that acts on the part of the buyer could not, from the nature of things, be expected it is sufficient that the property comes to his possession and that he expresses his approval thereof."

The cases referred to in the note to the last sentence of the quotation are generally cases in which the possession of the goods was in the buyer at the time of the sale.

Appellant calls our attention to the following cases to the same effect: *Porter* v. *Graves,* 104 U. S. 171, 26 L. Ed 691; *Wilson* v. *Hotchkiss,* 171 Cal. 617, 154 Pac. 1, L. R. A. 1916F, 389, Ann. Cas. 1917B, 570; *Snider* v. *Thrall,* 56 Wis. 674, 14 N. W. 814; *Smith* v. *Bryan,* 5 Md. 141, 59 Am. Dec. 104; *Couillard* v. *Johnson,* 24 Wis. 533; *Webster* v. *Anderson,* 42 Mich. 554, 4 N. W. 288, 36 Am. Rep. 452; *Calkins* v. *Lakewood,* 17 Conn. 154, 42 Am. Dec. 729; *Brown* v. *Wade,* 42 Iowa, 647; *Woodford* v. *Patterson,* 32 Barb. (N. Y.) 630. Also to Mechem on Sales, § 389, and Benjamin on Sales, § 182.

: It cannot be consistently contended, where the goods are already in possession of the buyer at the time of the oral agreement, that it is necessary for the seller to first take them into his own possession before he can consummate a delivery. Such contention would be absurd on its face and it is only fair to state that respondent makes no such contention in the case at bar. It does insist, however, that there must be some affirmative act on the part of the purchaser manifesting an intention to accept the property under a sale agreement in

order to make a transition of title from seller to purchaser. In support of this contention *Silkman Lumber Co.* v. *Hunholz,* 132 Wis. 610, 112 N. W. 1081, 122 Am. St. Rep. 1008, 13 Ann. Cas. 713, is relied on. The case is also reported and annotated in 11 L. R. A. (N. S.) 1186. The first paragraph of the note states the doctrine as follows:

"The weight of authority supports the general position taken in the foregoing case, that possession of the goods by the purchaser at the time of the oral agreement will neither prevent, nor in itself establish a receipt and acceptance which will take the contract out of the statute of frauds; but that acts of possession which are referable to the agreement of sale, and are inconsistent with the previous arrangement under which the possession was held, are necessary and sufficient to satisfy the statute in this regard. It is obvious that the character of the acts of possession required by this criterion will depend somewhat upon the character of the arrangement under which the possession was originally held. For example, a subsequent sale of the property by the purchaser to a third person is doubtless sufficient where the property was originally in the purchaser's possession as agent or bailee without authority to sell the same; but, if his prior possession was accompanied with authority to sell, the mere fact of the subsequent sale is not sufficient to satisfy the statute, since it is not inconsistent with the continuance of the original arrangement."

As illustrating respondent's position upon this question, it contends that, where the possession is in the buyer as bailee, he must do some act showing acceptance of the property as vendee, for instance, selling, or attempting to sell or dispose of the whole or some portion of it, in order to take the contract out of the statute. In this connection respondent cites *Godkin* v. *Weber,* 154 Mich. 207, 114 N. W. 924, 117 N. W. 628, 20 L. R. A. (N. S.) 498, and note. See, also, *Bicknell* v. *Owyhee Sheep & Land Co.,* 31 Idaho, 696, 176 Pac. 782, 4 A. L. R. 897, and note. In the case last cited, in the body of the opinion as reported in A. L. R., at pages 901 and 902, the court says:

"While it is true that no act of a seller of personal property alone can constitute a delivery, taking the contract out of the statute of frauds, without a receipt and acceptance by the buyer, the act of the buyer of goods under a contract within the statute of frauds, in offering to sell the goods which he has contracted to purchase, is such an act as constitutes an acceptance of the goods so as to take

the contract out of the operation of the statute. \* \* \* *Snow* v. *Warner*, 10 Met. 132, 43 Am. Dec. 419; *Dean* v. *Tallman*, 105 Mass. 443; *Dauphiny* v. *Red Poll Creamery Co.*, 123 Cal. 548, 56 Pac. 451."

The proposition that mere words are not sufficient to establish a receipt and acceptance is asserted by some of the authorities. In 27 C. J. 243, hereinbefore referred to and quoted, it is said:

"*Except as otherwise provided by statute*, as a general rule mere words are not sufficient," etc. (Italics ours.)

It will be noted that the statute relied on here (subdivision 3) reads as follows:

"There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

By the express terms of the statute either words or conduct may be sufficient. Of course the inference to be drawn from either should be clear and unequivocal.

It is generally held by the authorities that an attempt by the buyer or an offer by him to sell the goods after the contract of sale constitutes an acceptance within the meaning of the statute. It is incontrovertible that an offer to sell may, and generally does, consist of words alone. The question is: Do the words of the buyer in possession imply an assumption of ownership on his part and a recognition of the sale? If so, it seems to the writer it ought to take the contract out of the statute.

This brings us to a further consideration of the findings. In finding No. 4, after finding that the sale was made and the price settled and agreed upon, the finding reads:

"Which price it was then and there agreed was to be paid by the defendant to the plaintiff on or about the 15th day of September, 1920, and that on or about said 15th day of September, 1920, the defendant requested of the plaintiff an extension of the time of payment and promised and agreed to pay the plaintiff the aforesaid purchase price within the period of a week or two weeks after September 15, 1920, to which extension of time plaintiff agreed."

By the sales agreement made on September 1, 1920, payment for the wheat was to be made within two weeks, or on September 15th. We omit consideration of this feature in-

asmuch as it was a part of the sales agreement. But, as the finding shows, on the 15th respondent requested a further extension of a week or two within which to make payment, with which request the plaintiff complied. The sale was manifestly unconditional. There was no understanding that title should not pass until the payment was made. It was simply an extension of credit to a buyer to pay for property he had purchased, which property was already in his possession and under his absolute control and dominion. Is there any doubt whatever when defendant, after the money became due, asked for a further extension of time in which to pay and the extension was granted, that both plaintiff and defendant then and there recognized, signified and understood that defendant was the owner of the wheat? We think not. Furthermore, we are of opinion, if mere words in any case are sufficient to take a contract out of the statute, there ought not be any doubt whatever in the case at bar. The undisputed evidence shows that during the period covered by this transaction the market for wheat was declining. Had the market been advancing it is more than probable this case would not have reached the court at all, or if it had it would have assumed a different form and the position of the parties as to the statute of frauds would have been reversed. The statute was intended to prevent fraud, and not to aid in its perpetration.

The court is convinced as matter of law that the trial court erred in finding there was no acceptance and receipt of the wheat by the defendant in pursuance of the sale, and also in its conclusion that the plaintiff was not entitled to recover, by reason of the statute of frauds.

The judgment is reversed, with directions to the trial court to grant the plaintiff a new trial. Defendant to pay costs.

WEBER, C. J., and GIDEON, CHERRY, and FRICK, JJ., concur.