202 P.2d 528

**BROWN v. BECK.**

No. 5044.

Supreme Court of Arizona.

Feb. 9, 1949.

Rehearing Denied March 10, 1949.

Claude E. Spriggs, of Phoenix, for appellant.

Baker & Whitney and George M. Sterling, all of Phoenix, for appellee.

STANFORD, Justice.

In the trial court Beck sued Brown. Herein we will style Beck (appellee) as plaintiff, and Brown (appellant) as defendant.

Action was brought on seven causes of action. The fifth and sixth causes of action were dismissed by the court on plaintiff Beck's motion at the close of his case.

The first cause of action according to the complaint was upon an implied contract for the payment of the sum of $3100 for work, labor and services performed by plaintiff for defendant on a quantum meruit basis, no dates being set forth for the commencement or completion of the work. Plaintiff claims the second, third and fourth causes of action were for damages for conversion of certain personal property of the value of $600, $700 and $560, respectively. Plaintiff claimed by his seventh cause of action that the sum of $1200 was due him from defendant for building and equipment sold by him to defendant.

Defendant Brown answered and counterclaimed against plaintiff as to the first cause of action alleging that plaintiff went to work for him on the 3rd day of September, 1944, to discharge an indebtedness due him from plaintiff in the sum of $2180.-55, and by reason of plaintiff's labor he earned $937.50 for services rendered until the 10th day of March, 1945. After defendant deducted social security payments and income tax withheld in the sum of $235.63 a balance of $701.87 was left earned by plaintiff toward the reduction of the indebtedness owed by him to defendant. Defendant claimed also to have advanced money and paid debts for plaintiff in the further sum of $730.75; that defendant salvaged certain property turned over to him by plaintiff valued at $785, and after allowing credit for salvage alleged the sum of $1424.43 is due defendant by plaintiff.

On the second cause of action defendant claimed moneys were due him for storing building material for plaintiff in defendant's building in Deming, New Mexico; that the trucks of defendant were used in effecting such storage; that said building materials so stored were worth not to exceed $200; that for use of trucks belonging to defendant plaintiff owes drayage in the sum of $25; that for such storage plaintiff owed defendant the sum of $240, or $265 in all.

On the third cause of action defendant generally denied the indebtedness, but claimed that in August, 1944, plaintiff transported to Clifton, Arizona, from Deming, New Mexico, and to Safford, Arizona from Deming, New Mexico, certain personal property including sundry auto parts which defendant believes to be of the value of $200; that said auto parts have been in storage in Clifton and Safford in properties belonging to defendant and that a reasonable storage value is $40 per month, totaling $480; that the truckage of said auto parts amounted to the sum of $155, and that there is a total of $635 due this defendant on this counterclaim.

As to the fourth cause of action defendant denies the indebtedness of $560 or any sum and alleges that in August, 1944, plaintiff left certain tools and equipment for storage with defendant. The defendant believes the value of said property to be $100; that a reasonable value for storage for a period of twelve months on such tools is $240.

Respecting the seventh cause of action defendant denies the indebtedness of $1200 and as a further defense states " * * * that said alleged transfer or sale by plaintiff to defendant as set forth in said seventh cause of action is void for the reason that it is in violation of the Statute of Frauds, to-wit, Subdivision 4 of Section 58-101, A. C.A.1939."

The verdicts of the jury were rendered in favor of the plaintiff on the first cause of action in the amount of $3100; on the second cause of action for the sum of $400 and for the defendant on his counterclaim in the sum of $25; on the third cause of action for the sum of $500 and for the defendant on his counterclaim in the sum of $155; on the fourth cause of action for the sum of $500; and, on the seventh cause of action the sum of $1200, the amount prayed for by the plaintiff.

Appeal was taken by the defendant from the judgment entered by the trial court on the verdicts rendered and from the orders of the court denying defendant's motions for judgment notwithstanding the verdicts and for a new trial.

Plaintiff's first cause of action for the sum of $3100 was, as stated, upon an implied contract based upon quantum meruit. The plaintiff testified that there was a written contract on the subject of the em-

ployment, but the terms of that contract were never established, neither was the contract produced nor properly accounted for and there is no evidence as to the value of services rendered by plaintiff Beck on the quantum meruit theory, but apparently the verdict was based on the written contract which was not in evidence. The time worked at $50 a week, which was the amount per week to be paid by the written contract, amounted to approximately $3100, the verdict rendered by the jury on the first cause of action.

 The law is that one cannot declare on an express contract and recover on quantum meruit. In other words, plaintiff Beck failed to prove the written contract, yet the jury found its verdict on same.

12 Am.Jur., Contracts, Sec. **7**, p. 505 states:

" * * * No agreement can be implied where there is an express one existing."

We are satisfied that as to count one of plaintiff Beck's that the proof submitted did not conform with the pleadings. Moreover, the jury's verdict on this first cause of action that the defendant was not entitled to anything on his counterclaim is difficult to understand or reconcile with Beck's admission at the trial that he owed Brown a substantial sum for moneys theretofore advanced to him.

 On plaintiff's second, third and fourth causes of action the prayer asks for the recovery of the possession of the personal property involved or for the value thereof in the sums heretofore set forth in case delivery could not be had. The verdicts in all three of these causes of action were for the value of the property as the jury found the amount to be. In the second and third causes of action the jury verdict at the same time found for the defendant on his counterclaim in the sum of $25 and $155 respectively.

Where the return of personal property is sought or a judgment for its value in case delivery cannot be had is prayed for, a judgment of the court for the value of the property alone does not conform to the pleadings. Brown's testimony further shows that at the time of the trial all of the property referred to in the second, third and fourth causes of action was in Phoenix and could be returned to Beck.

In respect to the second and third causes of action the jury, as heretofore stated, found in favor of Brown on his counterclaim for storage and drayage of materials involved. This is contradictory because it is inconsistent with the findings of the jury in favor of plaintiff Beck as to those causes of action and the question naturally arises, how could Brown convert the property involved and still be entitled to recover on his counterclaims for storage as a bailee. This irregularity is an error that can be cured only by our disposition of the case as hereinafter stated.

As to the seventh cause of action defendant relies on our section 58-101 relating to the Statute of Frauds, reading in part:

"No action shall be brought in any court in the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

"4. Upon a contract to sell or a sale of any goods or choses in action, of the value of five hundred dollars ($500), or upwards, unless the buyer shall accept part of the goods or choses in action, and actually receive the same or give something in earnest to bind the contract, or in part payment, \* \* \*".

From the testimony we find that on March 29, 1944, one Charles W. Miller sold to plaintiff Beck under a written agreement six city lots in Deming, New Mexico, a building in which a cafe known as the "Jannell Shop" was being operated then located on property belonging to one Mounds (this building to be moved within 30 to 45 days onto the lots above referred to), and the furniture and fixtures of said cafe as per list appended to the agreement. The total purchase price was $2,000 which amount was to be paid out in monthly installments. A copy of the agreement with muniments of title was deposited with the Mimbres Valley Bank as escrow holder. (Due to failure in making payments the contract was later declared forfeited, and on March 17, 1945, the bank returned the deeds and bill of sale to Miller.) It was his own equity in this agreement that Beck testified he sold and assigned to Brown for $1200 under an oral agreement whereby the latter was to assume the contract and pay it out.

The sole testimony in the record as to the date of transfer of any of the personal property in question to the possession of Brown was that of Brown himself. His testimony to the effect that it was not until Beck started to work for him in August of 1944 that this personal property was moved into his warehouse from the premises of one Henry Finn stands uncontradicted. The jury was not at liberty to disregard this testimony. Until this last date the personalty, which embraced both the materials which composed the building itself and the furniture and fixtures which had been within the cafe, had been stored upon property belonging to Finn, by whom Beck had been employed from March 25 to July 29, 1944. It was Beck himself who had torn down the cafe building and had stored it with Finn, instead of moving it off the Mounds' property over on to the lots covered by the Beck-Miller contract.

The importance of this matter of possession and the date of transfer thereof cannot be underestimated, for Beck greatly relied at the trial of the case upon the prop-

osition that said personal property had been delivered to Brown at the time the alleged oral agreement between Brown and himself had been entered into, and at no other time. This reliance is evidenced by the fact that at the close of the case the court granted the plaintiff Beck permission to amend the seventh count of his complaint to read, "* * * *that at the time of said assignment* the plaintiff delivered to the defendant the equipment and fixtures set forth in said conditional sales contract agreement."

The law would seem to be clear that something over and above this fact of possession alone must be shown before the alleged agreement can be taken out from under the cloak of the statute of frauds. As was said in the case of James Mack Co. v. Bear River Milling Co., 63 Utah 565, 227 P. 1033, 1034, 36 A.L.R. 643:

"In the case at bar, the wheat being in possession of the buyer at the time of the purchase, manual delivery was impracticable, and unnecessary, and therefore was not required. It does not follow, however, that, because the buyer was in possession, and for that reason manual delivery was not required, therefore the terms 'accept' and 'actually receive' are of no importance. Something besides being already in possession at the time of the sale is necessary to distinguish the character of the possession. In this case, for instance, at the time of the sale defendant held the wheat in the character of bailee. In order to take the contract out of the statute of frauds something must occur independent of the oral agreement to show that the character of bailee was converted into that of vendee, and that he retained the goods in that capacity."

In the annotation to 36 A.L.R., supra, appearing at page 649, the rule as to the necessity of an affirmative act is succinctly set forth as follows:

"The fact that goods are in the possession of a vendee does not constitute a sufficient acceptance under the Statute of Frauds without some affirmative act evincing acceptance of the goods by the purchaser. The mere fact that the property is in the possession of the purchaser at the time of making the contract furnishes no evidence of acceptance, but he must perform some act indicating that his present possession is that of ownership."

Beck, as plaintiff, not only had the burden of establishing every material phase of his case, but also had the burden of overcoming the effect of defendant's plea of the statute of frauds. While we concede as an abstract proposition of law that a legal acceptance and actual receipt of the goods or part thereof will remove the bar of the statute, it seems to us that the evidence in the case at bar falls far short of meeting what the law requires.

In cases of this nature the following statements, as to the proof necessary to constitute acceptance and receipt, from 37

C.J.S., Frauds, Statute of, § 148, are appropriate:

"To constitute an acceptance and receipt satisfying the statute of frauds, there must be a surrender by the seller of all dominion and control over the thing sold, and an acceptance and receipt by the buyer with intent to appropriate it absolutely as his own; the transaction must be of such a character as unequivocally to take the property from any control over it by the seller and place it under the absolute and exclusive dominion of the buyer. * * *

"The acceptance required by the statute is some act or conduct by the buyer manifesting an intention to appropriate the property to his own use and to hold the specific goods as the owner thereof. Whether or not the buyer has accepted depends largely on the facts and circumstances of each separate transaction. * * *"

Section 150, Ibid., says:

" * * * To constitute an acceptance the buyer must so deal with the property as to prove that he acknowledges the existence of the contract; there must be some act on his part plainly recognizing the existence of the contract and that the property has been received in accordance therewith. * * *"

It must be remembered:

"The receipt required by the statute of frauds is not the same as the delivery referred to in ordinary sales law; acts which would constitute a delivery if the contract were an enforceable one do not necessarily constitute a receipt satisfying the statute of frauds. * * *" Ibid., § 148.

On this matter of acceptance and receipt by Brown, the record contains only the bald and unsupported statement of Beck that he assigned the contract to Brown coupled with the fact that the property rested for a time in Brown's warehouse in Deming. To us it is highly significant that plaintiff offered no evidence of Brown exercising any dominion or control over the personal property in question.

The judgment of the trial court in the first, second, third and fourth causes of action is reversed and remanded for new trial; the judgment as to the seventh cause of action is reversed with directions to the trial court to dismiss that portion of the complaint.

LaPRADE, C. J., and UDALL, PHELPS, and DE CONCINI, JJ., concur.