WEST RIVER EQUIPMENT CO., A CORPORATION, PLAINTIFF AND APPELLANT, v. HOLZWORTH CONSTRUCTION CO., A CORPORATION, DEFENDANT AND RESPONDENT. WEST RIVER EQUIPMENT CO., A CORPORATION, PLAINTIFF AND APPELLANT, v. HOLZWORTH CONSTRUCTION CO., A CORPORATION, ET AL., DEFENDANT AND RESPONDENT.

Nos. 9698, 9699.

Submitted on Rehearing Jan. 12, 1959. Decided Feb. 5, 1959.

335 Pac. (2d) 298.

Hugh J. Lemire, Miles City, Bangs, McCullen & Butler, J. M. Butler, Rapid City, S. D., argued orally, for appellant.

Colgrove & Brown, Roland V. Colgrove, Miles City, argued orally, for respondent.

MR. JUSTICE CASTLES:

This is an appeal from a judgment entered in two causes consolidated for trial and on appeal, after a motion for new trial had been denied. The consolidated actions were tried to a jury, the verdict being for the defendant and against the plaintiff. Judgment was entered accordingly wherein the defendant was found to be the owner of two road scrapers of the value of $9,675. Defendant was awarded damages by reason of the taking, withholding and detention thereof in the sum of $4,200.

In April 1953, Holzworth, president of respondent Holzworth Construction Company and hereafter referred to as respondent, met one Brackett, a salesman for the appellant West River Equipment Co., in Rapid City, South Dakota. The appellant leased to respondent at a rental of $1,400 per month, two road scrapers. The respondent took the scrapers to Miles City, Montana. Shortly thereafter he returned to Rapid City and leased two tractors. At that time the lease on the two scrapers was cancelled, and a new lease contract was entered into covering the two tractors and the two road scrapers. The contract provided

for rental payments of $2,000 each, commencing July 1, 1953, and continuing on the first of each month through December 1, 1953. Thereafter, payments were suspended until June 1, 1954, when they were to commence and run until December 31, 1954. Respondent Holzworth could exercise an option contained in the lease and purchase the property, and, if he did so, 100 percent of the rents paid would be credited on the purchase price. The appellant hypothecated this lease contract to a Bank in Rapid City in August 1953.

The respondent made the June, July and August rental payments of $2,000 each. September, October, November and December 1953 payments of $2,000 each were also made, but were made to the Rapid City Bank, to which the lease contract had been assigned. On August 21, 1953, the respondent was notified of this assignment in writing and that he should thereafter make his payments to the Bank. This he did.

No payments were made in 1954, none being required until June. In August of 1954, the two tractors were reclaimed by the appellant, being taken from respondent's job near Glendive. Delivery of the scrapers was refused and subsequently two actions were instituted; first for the delivery of the two scrapers, and second for the rentals due and costs of removal.

An answer and cross complaint was filed by the respondent in each of the actions. In the cross complaint the respondent claimed that in August 1953, the lease was cancelled by oral agreement, and an oral agreement of purchase was made whereby respondent would buy the two scrapers and would make unspecified periodical payments in a total amount of $11,000. The respondent claimed damages in each cross complaint.

At the trial the appellant submitted in evidence the lease agreement, and its expenses of recovery of the items. It claimed rentals in accordance with the agreement for the period of June, July and August in 1954, and for expenses of recovery. Over objection, the respondent submitted testimony of an oral cancellation of the written agreement. It was the claim of the respondent, through such evidence, that in August of 1953, an

oral cancellation of the lease agreement was had, and that a new oral agreement of purchase of the two scrapers was made by it for a price of $11,000.

The oral agreement asserted was that the two scrapers were purchased in August 1953 for the sum of $11,000 to be paid for in periodic payments with no amount or time of payment specified. The alleged oral cancellation of the agreement and the alleged making of the new oral agreement occurred as follows according to the respondent.

Respondent, after making three payments under the written lease agreement, had completed the road building job for which he had leased the road scrapers and tractors and had no further use for them. On August 26, 1953, four days before the September rental payment was due, Holzworth was in Helena attending a highway contract letting. Prior to this time, the appellant, through its manager Vallette and its salesman Brackett, had endeavored to sell Holzworth a gravel crusher. Holzworth had proposed to trade in various pieces of his used equipment, but no agreement had been reached. Vallette and Brackett came to Helena and met Holzworth for the purpose of closing the sale on the crusher. In the discussion, Holzworth told them he had no further use for the scrapers and tractors and wanted to return them before the September payment became due. According to Holzworth, Vallette and Brackett orally agreed that the written lease was cancelled "as of now" and that Holzworth would store the equipment in Miles City.

The following day, Holzworth, Vallette and Brackett, returned to Miles City from Helena. After negotiations in Miles City, an agreement was reached on the sale of the gravel crusher and a contract was signed. About the same time, according to Holzworth, it was learned that Holzworth was low bidder on a road job where the two road scrapers might be used. According to Holzworth, after considerable bargaining, the appellant, sold by oral contract, the same two road scrapers to the respondent for $11,000. It was further allegedly orally agreed that Holzworth would make monthly payments of $2,000 to the Rapid

City National Bank and that appellant would pick up the previously signed written agreement from the assignee bank by the first of year, and that a balance of $3,000 could be paid at any time in 1954. According to Holzworth, he was to deliver the two tractors to Miles City.

The appellant vigorously denied the oral cancellation of the written contract and the alleged new oral agreement. The only evidence submitted as to each of the alleged oral transactions was the testimony of Holzworth.

At the conclusion of respondent's testimony, appellant made a motion for directed verdict and renewed the motion at the conclusion of the testimony in the case. Both motions were denied, and the cause was submitted to the jury.

The appellant specifies fifteen errors and groups them in his brief under four questions as follows:

1. Was oral evidence admissible to alter the terms of the written contract?

2. Could the written contract be altered or cancelled by the claimed oral agreement?

3. Was the claimed oral agreement valid and enforceable?

4. Was the evidence submitted by respondent sufficient to establish the oral contract?

The respondent claims that the above questions do not properly set up the case, in that their claim was not an oral *alteration* of a written contract, but rather an oral *cancellation* and a substitution of a completely new oral agreement of purchase.

This theory of oral cancellation, rescission, abandonment or waiver of the written contract was specifically pleaded in the answer and cross complaint. Also the new oral agreement of purchase was specifically pleaded, thereby putting the issue of *cancellation* rather than alteration of a written agreement at issue.

We have said in Eggers v. General Refrigeration Co., 123 Mont. 205, 219, 210 Pac. (2d) 636, 644: "The parties to the executory written agreement were privileged to terminate it at any time by mutual consent independently of any express

agreement so providing and it is immaterial whether such termination be characterized an abandonment, cancellation, mutual rescission or waiver. The effect is the same—to relieve the parties from going forward under the written instrument, and this may be accomplished by parol, *and the fact of its having been done established by evidence of the acts and declarations of the parties.* Ogg v. Herman, 71 Mont. 10, 20, 227 Pac. 476; Kester v. Nelson, 92 Mont. 69, 10 Pac. (2d) 379, 380.'' Emphasis supplied.

And, in Kester v. Nelson, 92 Mont. 69, at page 74, 10 Pac. (2d) at page 380, we said: ''There can be no question but what a contract may be mutually abandoned or modified by the parties at any stage of performance, and each of the parties released from further obligation on account thereof; that it may be accomplished by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties.''

It is clear then that a written contract may be cancelled by mutual consent, R.C.M. 1947, sec. 13-903, subd. 5, and that the cancellation may be oral. See Restatement, Contracts, sec. 222, p. 299; 6 Williston, Contracts, sec. 1828, p. 5178.

The statute of frauds does not preclude oral rescission of a prior written contract that is within the statute. But, if the prior contract effected a change in ownership of goods, an agreement to rescind is, in effect, an agreement to change the ownership again, and such agreement requires the same formality as the original transfer. Restatement, Contracts, sec. 407, comment b, p. 768. Or, stated another way, the statute of frauds must be complied with.

However, mutual cancellation must be clearly expressed and shown, and acts and conduct of the parties to be sufficient must be clear, convincing and inconsistent with the existence of the contract. 17 C.J.S. Contracts, sec. 389, p. 880; Peck v. Stafford Flour Mills Co., 8 Cir. 1923, 289 F. 43; 12 Am. Jur., Contracts, sec. 432, p. 1012; Vincent v. Palmer, 179 Md. 365, 19 A. (2d) 183, 188; Campbell v. Hart, Tex. Civ. App. 1953, 256

S. W. (2d) 255; Country Club Oil Co. v. Lee, 239 Minn. 148, 58 N. W. (2d) 247.

Some of the aforementioned authorities even require that such evidence be positive and unequivocal. See Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 Pac. (2d) 651, 94 A.L.R. 1264.

It seems to us that the reason that evidence to establish an ▮ oral cancellation of a written contract must be clear, convincing and inconsistent with the existence of the written contract is, as we said in Ikovich v. Silver Bow Motor Car Co., 117 Mont. 268, 273, 157 Pac. (2d) 785, 788, quoting from Webber v. Killorn, 66 Mont. 130, 132, 212 Pac. 852, 853, that " 'The principle is well-established and of general application, subject to certain exceptions, that *when a contract has been reduced to writing the contents of such writing cannot be added to, contradicted, altered, or varied by parol or extrinsic evidence,* and that such writing supersedes all oral negotiations concerning its matter which preceded, accompanied, or led up to its execution. This was the rule at common law, and has been embodied in the statute law of this state.' * * * and see Continental Oil Co. v. Bell, 94 Mont. 123, 21 Pac. (2d) 65."

R.C.M. 1947, sec. 13-907, states: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise."

An analysis of the written contract in the instant case with the alleged oral termination and making of a new oral contract involving the same items will demonstrate that were the court to permit a case to go to the jury on anything less than evidence that was clear, convincing and inconsistent with the existence of the written contract, it would permit a circumvention of the formality and proof required by our statutes. The effect of the allleged oral cancellation and substitution of a new oral agreement is exactly the same as an alteration of the writing prohibited by section 13-907, of our statutes. Thus, we should and do require evidence that is clear, convincing and inconsistent with the continued existence of the written contract. The plain-

tiff properly raised the issue of the sufficiency of the evidence in his motion for directed verdict and motion for new trial.

Thus, we examine the testimony. It appears that the only evidence of the oral cancellation of the written contract was that of Holzworth, the defendant respondent. His assertion, standing alone, is neither clear nor convincing. But even so, we look to the acts and declarations of the parties to determine whether they make it clear and convincing and inconsistent with the written agreement.

The appellant assigned the written contract to a bank and so notified the respondent. After this notification and pursuant to it, the respondent made his payments to the bank. The notice of the assignment occurred August 21, 1953. The alleged oral cancellation occurred August 26, 1953. The alleged new oral purchase occurred August 27, 1953. On September 1, 1953, the respondent paid $2,000 to the assignee bank as provided in the written agreement. Payments of the exact amount, $2,000, as provided in the written agreement were made each month to the assignee bank until the December payment. According to the written agreement, payments were suspended until June 1, 1954. After that date, the assignee bank addressed letters to the respondent for collection under the terms of the written agreement. The office manager and secretary-treasurer of the respondent company as late as June 16, 1954, wrote in reply as follows:

"In reply to your letter of June 11, 1954, regarding the payment of $2,000 plus interest and which was due on June 1st.

"Our Mr. Holzworth called the West River Equipment Co., regarding this note and advised them of our condition at present and we presumed that they advised you that this payment would be delayed a short time. We are at present in the process of getting a loan through and our estimates aren't coming through too fast or big enough, due to rainy weather.

"We would appreciate therefore if you would go along with

us for approximately thirty days or it might be a little sooner, depending on how soon our loan goes through.''

This very damaging evidence is impossible to harmonize with the respondent's claim of an oral cancellation of the written contract.

There were, in addition to the letters numerous telephone calls testified to between the bank and the respondent and between the appellant and respondent. When examined concerning them, Holzworth could only say, ''I just don't recall.'' In each instance the correspondence and calls testified to were consistent with the insistence of the appellant that the written contract was still in force.

The respondent in his brief explains this as follows: ''It is true the payments were made to the bank, but that was in accordance with the direction of the seller. While some letters were written to Holzworth in 1954 that went unanswered, the fact remains that when the bank called Holzworth he promptly notified them of the sale of the scrapers to him and the amount he then owed on them.''

The first statement is entirely consistent with the written notification of the assignment of the written contract to the bank and entirely consistent with the contract itself. The second statement as to the unanswered letters is borne out only by the bare assertion of Holzworth which was contrary to all the other testimony, and written letters, and occurred after he became delinquent. The point is, that by the record, it is shown that all of the acts performed by both parties were consistent with the terms of the written instrument and none of them were inconsistent. There was no act of recognition by the appellant of the alleged oral contract.

Furthermore, the respondent Holzworth retained possession of the machinery, including the D-8 tractors even though the contract provided for their return to the appellant at Rapid City. The evidence shows that they were taken from respondent's possession north of Glendive, Montana. The respondent's continued possession is not only consistent with the written

agreement, but is entirely inconsistent with the alleged new oral agreement.

The respondent argues that following the alleged oral sale of the scrapers to Holzworth, Brackett, salesman for the appellant Company, contacted one Walling, a contractor, and offered to sell him the two D-8 tractors. The respondent urges that this is inconsistent with the continuation of the written agreement. Yet, the written agreement was a lease agreement by the month, with the option to purchase. As heretofore detailed, negotiations for new and different equipment, prospective road building contracts, and continued dealings made this contract by Brackett entirely consistent with the written agreement and with all the other testimony adduced. Walling testified that he had been discussing purchase of the machinery with appellant prior to August 26, 1953, the alleged date of the oral cancellation. We cannot see that this evidence demonstrates anything that was inconsistent with the written contract.

We hold that the evidence is not sufficient to sustain the verdict nor to permit the submission of the case to the jury.

The third question posed by appellant is, was the claimed oral agreement valid and enforceable? The respondent rests his claim upon an oral agreement of sale. The sale was, as he pleaded, that respondent would purchase the two road scrapers for the total sum of $11,000 and that he would make periodic payments and would have possession forthwith.

R.C.M. 1947, sec. 74-201, provides:

"No sale of personal property, or agreement to buy or sell it for a price of two hundred dollars or more, is valid unless:

"1. The agreement or some note or memorandum thereof be in writing, and subscribed by the party to be charged, or by his agent; or,

"2. The buyer accepts and receives part of the thing sold, or when it consists of a thing in action, part of the evidences thereof, or some of them; or,

"3. The buyer, at the time of sale, pays a part of the price."

Does the claim of respondent fit any of the exceptions? It is

agreed that there was no writing. The record shows that there was no payment made at the time of the claimed agreement. A subsequent payment three days later was in conformity with the written contract and was shown to be recognized as a payment under the lease agreement. Then, was there a delivery of possession? The possession by the respondent was had under the lease agreement which was not delinquent at the time.

Respondent urges the rule, as stated in 37 C.J.S. Frauds, Statute of, sec. 153, p. 638, as follows:

"Where the goods which are the subject of the parol sale or contract are in the buyer's possession at the time, such possession satisfies the requirement of receipt, it is unnecessary for the seller to resume possession thereof in order that actual delivery may be made, and all that is necessary to satisfy the statute of frauds is that the buyer accept the goods; but it has been held that where it is sought to hold the seller to the contract it must be shown that the seller by some affirmative act assented to the receipt and acceptance of the goods."

But, the author of the section goes on to say:

"The fact that the property which is the subject of the contract of sale is already in the buyer's possession does not alone constitute an acceptance; but there must be some further manifestation of an approval of the property as fulfilling the contract. Evidence showing acts of dominion and control thereover by the buyer inconsistent with the facts on which his prior possession was based will be sufficient. Thus where the buyer sells the property, or requests an extension of time to pay, the statute of frauds is fully satisfied. Declarations of ownership, or other words indicating acceptance of the goods, will suffice, but it has been held that, where words alone are relied on to establish acceptance, the words relied on must be other than those relied on to establish the making of the sale or contract."

There must be some affirmative act to show delivery and acceptance under these circumstances. Any affirmance on the part of Holzworth in this case is completely negated by his subsequent recognition of the written agreement as previously set out.

His actions must be consistent with the alleged new agreement. This is particularly true where the so-called delivery and acceptance is based upon mere words alone. 49 Am. Jur., Statute of Frauds, sec. 280, p. 596; James Mack Co. v. Bear River Milling Co., 63 Utah 565, 227 Pac. 1033, 36 A.L.R. 649; 111 A.L.R. 1312. Under the circumstances herein, there is not a sufficient showing of delivery and acceptance to take the alleged oral agreement out of the statute.

The fourth question posed by the appellant that the evidence submitted by the respondent was not sufficient to establish the oral cantract has been largely answered hereinbefore. The only satisfactory evidence is that payments were made by the respondent in accordance with the terms of the written agreement without notice of any other claim. When the agreement became delinquent in June 1954, the respondent was promptly notified. The respondent, through its secretary-treasurer acknowledged the delinquency, acknowledged the written agreement, asked for time, and nowhere asserted any other agreement. There was not sufficient evidence to warrant the submission to the jury. The motion for directed verdict should have been granted.

For the foregoing reasons the judgment is reversed and the cause remanded to the district court with directions to enter judgment in accordance with the motions for directed verdict made during the course of the trial.

MR. JUSTICE BOTTOMLY, ACTING CHIEF JUSTICE, MR. JUSTICES ADAIR and ANGSTMAN, and THE HONORABLE JAMES T. SHEA, District Judge, concur.