231 P.2d 754

## McNEILL et al. v. MARBERRY.

No. 5298.

Supreme Court of Arizona.

May 28, 1951.

Jack Choisser, City Atty., Laurence H. Whitlow, James J. Cox, Jr., and Jack D. H. Hays, Assts. to City Atty., all of Phoenix, for appellants.

Aaron Kinney, of Phoenix, for appellee.

UDALL, Chief Justice.

The sole question presented by this appeal is whether the trial court erred in holding that the members of the civil service board of the city of Phoenix, respondents-appellants, acted without or in excess of their jurisdiction in sustaining the dismissal from service of Hobert Marberry, petitioner-appellee, a bus operator in the department of transportation of the city of Phoenix.

The Phoenix city manager by an order in writing dismissed petitioner, a civil service employee, from his job for the reason that Marberry had allegedly five times violated a lawful and official regulation, to wit: Rule 42(b) of the rules of the civil service board, the material part of which reads: "Operator's Responsibility

"Operators are held responsible. for:
* * *

"(b) Collecting and proper accounting of all fares and tickets."

Petitioner after his dismissal employed counsel and, following Rule VIII of the procedure outlined in the board's rules, filed an answer denying the charge and requested a hearing before the civil service board. This request was granted and the record before us contains a 90-page transcript of the testimony taken at such hearing. (It was a combined hearing of the charges against petitioner and two other bus operators who had been similarly discharged.) The members of the respondent board unanimously upheld petitioner's dismissal.

Petitioner subsequently obtained a writ of certiorari, Ch. 28, Art. 1, ACA 1939, to review the action taken, which it was alleged was not justified by the evidence presented and hence was beyond the board's jurisdiction. See City of Phoenix v. Sittenfeld, 53 Ariz. 240, 88 P.2d 83. The complete record of the proceedings was transmitted to the superior court. At the hearing before the court the rules of the city transportation system and of the civil service board were admitted in evidence by stipulation. After oral argument and the submission of briefs the court entered written judgment vacating and declaring void the order of dismissal. This appeal followed.

The unconflicting evidence upon which the dismissal was based shows that due to an appreciable non-seasonal drop in revenue, particularly on the transportation system "long runs", the Phoenix superintendent of transportation brought in from outside the city two experienced women "checkers". These women testified that on

130

three separate occasions, involving five fares, petitioner accepted from one of them the proper fare (35¢ each on petitioner's Litchfield Park run) without requiring them to deposit the fare in the fare box and that during the 45-minute run, to their knowledge, the driver did not place their fares in said box. They stated that part of the money (the smaller coins) given by them to the driver went into petitioner's "money changer" but that they were not sure just what happened to the larger coins (half dollars). There was no testimony as to whether petitioner did or did not account for these fares at the end of the day.

The superintendent explained in considerable detail the manner in which the mechanical fare box registered the small coins deposited therein. The fare box is a metering device which records the number of coins of each type which passes through it; it will not take any coin larger in diameter than a nickel. The proper fare in small coins must be deposited in the fare box in order for the same to be recorded, and if a customer does not have the correct change in small coins the bus operator will make change for him so that the proper amount may be deposited by the customer in the fare box. The operator at all times has access to all the moneys collected. The superintendent further testified that immediately after it became generally known that "checkers" were riding the busses the revenue on the entire system increased some $200 per day.

Petitioner did not see fit to take the witness stand, and there is no refutation of the testimony given by the women checkers. The entire defense consisted of a motion to dismiss the charge and to reinstate the petitioner to his old position. It was shown that at the end of the day the petitioner did account for all money that was deposited in the fare box, i. e., he paid over to the city of Phoenix all of the money that went through the fare box and was recorded by it.

The trial court in annulling and vacating the city manager's order of dismissal took the view, urged by petitioner, that there was a fatal variance between the charge, i. e., violation of Rule 42(b), supra, and the proof adduced which, it is argued, shows only a violation of Rule 30, section 1, Fare Boxes, which reads: "Operators in making change, must return entire amount of change to the patron and see that proper amount is deposited in fare box. Under no circumstances shall the operator deposit fare for passenger."

The respondent board on the other hand contends that the term "proper accounting" as applied to the collection of fares under Rule 42(b), supra, necessarily means the recording of the transaction *at the time it occurs* by immediately having the fare deposited in the fare box where the mechanical metering device incorporated therein provides an automatic record that forms the only true basis for an accurate accounting between the bus operator and the city at

the close of the operator's services for the day. The board urges that to hold otherwise would be to give sanction to the bus driver's keeping the funds in his possession until the end of the run and then the sort of record or accounting which would follow would obviously be one in which mistakes, errors and omissions would inevitably occur. In the instant case both the city manager and the respondent board drew the inference from the evidence presented that petitioner had failed to properly account *at any time* for the five fares which the "checkers" testified were not. deposited in the fare box during the trip.

While it is a rudimentary principle that the *allegata* and *probata* must correspond, yet we are of the opinion that the trial court in annulling the respondent board's order as being in excess of its jurisdiction took an altogether too narrow view of the meaning of the term "proper accounting" as used in Rule 42(b), supra. The chief method provided by the city for a "proper accounting of all fares" received by the operator during his period of service was to make a record of such receipts at the time received by him. This record was made by requiring the customer to immediately deposit his fare in the device furnished by the city. This constituted so to speak the original entry of the amount received. In no other way could a proper accounting be made of such receipts. True it might have been wiser for the city manager to have given as the reasons for dismissing petitioner violations of both rules—Rules 42(b) and 30, section 1—the latter violation having been tacitly admitted, yet in view of the fact that the requirement of forthwith depositing the fare in the fare box is an integral and necessary part of the accounting procedure required by the city transportation system, we do not believe that there is a fatal variance between the charge made and the proof submitted in support thereof. Hence we hold that the lower court erred in vacating and holding void the action of the respondent board sustaining the city manager's order dismissing petitioner.

It should be noted that under the rules of the respondent board there may occur violations of Rule 42(b) that would not involve a violation of Rule 30 (section 1). But under the circumstances as here presented the failure to deposit the proper amount in the fare box would invariably result in a violation of the rule as to proper accounting.

Judgment reversed, with directions to quash the writ.

STANFORD, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.