279 P.2d 717

**COMMERCE MORTGAGE COMPANY, a corporation, Appellant,**

**v.**

**TITLE REALTY CORPORATION, a corporation, Appellee.**

**No. 5783.**

Supreme Court of Arizona.

Feb. 8, 1955.

Shimmel, Hill & Hill, Phoenix, for appellant.

Lewis, Roca, Scoville & Beauchamp, Phoenix, for appellee.

UDALL, Justice.

Appellant, Commerce Mortgage Company, a corporation, prosecutes this appeal from a judgment of $951.75 rendered against it and in favor of plaintiff-appellee Title Realty Corporation, on an alleged contract of joint venture. The case was tried to the court sitting without a jury. The parties will be referred to as they appeared in the lower court—plaintiff and defendant.

While there are many sharp conflicts in the evidence, some of which must be referred to in determining the issues raised on this appeal, yet it is our duty to consider the facts in an over-all light most favorable to sustaining the findings and judgment of the lower court.

Defendant is an Arizona corporation, engaged in the mortgage loan business in the Phoenix area. As local representative for various life insurance companies, it negotiates mortgage loans on real estate for which it receives a 2% commission from the builder, a further commission of 1% from the lender when the mortgage is assigned, and sometimes an interest differential on moneys advanced to the builder for interim construction costs. It also owns an interest in an insurance agency from which it receives commissions on policies issued on the mortgaged property.

In the summer of 1949 it secured the mortgage loan business on a 20-acre subdivision known as "Tangerine Park", located at 16th Street and Montebello Avenue in Phoenix, and ultimately commitments to supply the mortgage money for twenty-five of the houses were given by New York Life Insurance Company.

One Robert Willcutt, who was then employed by defendant as its mortgage loan manager and corporate secretary, felt the sales in "Tangerine Park" were moving too slowly. Because this was defendant's first large subdivision financing and first commitment from New York Life he took steps to speed up the sale of the properties, in order that a substantial profit could be realized from a rapid turnover. He therefore approached one Bert Fineg, president of plaintiff corporation, whom he considered to be a "live wire salesman" with the suggestion that Fineg contact the owners of "Tangerine Park" about the possibility of securing an exclusive sales agency with them for his company. After negotiations with the owners, Fineg reported to Willcutt that while the subdivision had possibilities, he was not interested in undertaking the sale of the subdivision because the houses were in such run-down condition as would make sales difficult and the owners would not give him the usual 5% commission.

Willcutt, to induce Fineg to take over the sale of this subdivision, agreed with him to pay plaintiff a share of defendant's profits from financing the properties. Relying on this promise, Fineg, on behalf of plaintiff, on August 26, 1949, entered into an exclusive sales agency with the owners of the subdivision, accepting less than the customary 5% commission he desired, and all the houses were thereafter sold through his efforts. In October, 1949, after Willcutt left his position with defendant, Fineg made several demands upon the defendant corporation for a share of the profits due him under the agreement with Willcutt. Defendant, through Albert Brygger, its president and primary stockholder, refused to honor his demands, claiming this was the first he had heard of such an agreement, though Brygger did offer a check for $250 as a "nuisance value" settlement which Fineg refused to accept. After the houses in the subdivision had all been sold this lawsuit was instituted.

Plaintiff in its complaint alleged that defendant, through its agent Willcutt, agreed to give plaintiff one-half of its gross profits from the financing and insuring of the subdivision properties. Fineg in his testimony referred to it as "a split down the middle". Defendant answered denying the formation of any contract or the authority of Willcutt to enter into such an agreement and in addition it plead the statute of frauds as a bar to the action.

The trial court in its findings of fact found that a contract was made, that it was within Willcutt's authority, and concluded that the agreement was not within the statute of frauds. It found, however, that the agreement made was not for a "split down the middle", but accepted Willcutt's testimony that the contract was for one-half of one percent of the $190,350 loaned by the New York Life Insurance Company on this subdivision.

Defendant asserts that the findings of fact and conclusions of law are erroneous in that there is a fatal variance between pleading and proof and that the evidence conclusively shows there was no meeting of the minds between the parties. Further it is contended that the terms of the contract were so uncertain as to be invalid and that if an oral contract was entered into it was unenforceable under the statute of frauds, section 58–101 (sub. 7), A.C.A.1939.

The court found, *inter alia*, that:

"* * * Commerce Mortgage Company, through Mr. Willcutt, agreed to pay Mr. Fineg the sum which would be equal to one-half of one percent of the total amount of the mortgages negotiated and placed by Commerce Mortgage Company on the lots in said Tangerine Park Subdivision."

Defendant contends, without any citation of authority, that this finding is invalid in that it establishes and orders recovery upon "* * * a contract essentially different from the one pleaded and relied upon throughout by appellee, and one expressly repudiated by the testimony of Fineg."

It is a rudimentary principle that the *allegata* and *probata* must correspond. McNeill v. Marberry, 72 Ariz. 128, 231 P.2d 754. However, as was stated in Dougherty v. California Kettleman Oil Royalties, 9 Cal.2d 58, 69 P.2d 155, 169:

"* * * it is well settled that a mere difference in quantity of consideration between the pleading and proof is not a material variance. (cits.) It has likewise been held, and for exactly the same reasons, that a mere change in the quantum of consideration to be paid under a contract does not constitute a change in the cause of action."

From this it follows that the court's finding that the consideration to be paid under the contract was less than pleaded is not a finding of a contract so essentially different from that alleged as to be invalid.

Defendant contends "The evidence conclusively shows that there was at no time any meeting of the minds of the contracting individuals, sufficient to constitute an enforceable contract." To support this contention it points to discrepancies in the testimony of Fineg and Willcutt as to dates, etc., etc., and quotes at length the bombastic, verbose and often evasive answers of Mr. Fineg. These same answers are relied upon for the proposition that the terms of any agreement are "too nebulous and indefinite to constitute an enforceable contract". However, defendant admits in its brief that there is evidence in the record, which the court was privileged to believe, of a promise to pay Fineg the amount found to be due. Defendant further states:

" * * * Nor will we consume the court's time in arguing that the testimony of both Fineg and Willcutt is, in the light of the prevailing circumstances, so essentially incredible as to comprise no basis for [the court's finding]."

This court is concerned only with whether the judgment is supported by reasonable conclusions of fact which may be gathered from the record, and if it is, the judgment must be sustained. Christy v. Arnold, 4 Ariz. 263, 36 P. 918; Ghiz v. Millett, 71 Ariz. 161, 224 P.2d 650. As plaintiff urges, defendant's contentions are but arguments of the facts, but the facts as found, admittedly being supported by competent evidence, cannot be disturbed on appeal.

## Statute of frauds

Section 58–101, A.C.A.1939, provides in part as follows:

"No action shall be brought in any court in the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized:

* * * * * *

"7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission; * * *."

Defendant contends that an action upon the contract in question is barred by the above-quoted provision of the statute of frauds. In support of this proposition it cites the statement appearing in 12 C.J.S., Brokers, § 62, b(1), page 144:

"Contract with person other than owner. Unless limited by their terms to a contract with, or on account of, the owner, the statutes under consideration may apply to a contract between a broker and a person other than the owner of the property involved. * * *"

and cases appearing thereunder in note 1.

Be that as it may, we are already committed to a contrary interpretation. In the case of Bush v. Mattingly, 62 Ariz. 483, 158 P.2d 665, 667, we held this section inapplicable to a contract between a salesman and a broker, whereby the salesman was to receive a portion of the commission paid by the owner of the land to the broker. We quoted with approval the following statement of the law with reference to the subdivision of the statute in question:

" 'That provision was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to cooperate in making sales for a share of the commissions.' "

While the contract in the instant case is somewhat unique, it is not a contract be-

tween a broker and the owner of land, but a contract whereby plaintiff agrees with defendant to enter Tangerine Park Corporation's employ for the benefit of the defendant. The fact that the compensation is to be determined indirectly from the amount of real property sold for the owner does not bring the contract within the statute. Hall v. Rankin, 22 Ariz. 13, 193 P. 756.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.