410 P.2d 693

**Otto H. LINSENMEYER, Appellant,**

v.

**C. O. JACKSON, Appellee.**

**No. I CA–CIV 131.**

Court of Appeals of Arizona.

Feb. 2, 1966.

Rehearing Denied Feb. 23, 1966.

Review Denied March 15, 1966.

Otto H. Linsenmeyer and Frank E. Dickey, Jr., by Frank E. Dickey, Jr., Phoenix, for appellant.

Giles, Zielinski & Thur, by Calvin C. Thur, Scottsdale, for appellee.

CAMERON, Judge.

The plaintiff, C. O. Jackson, brought this action against Otto H. Linsenmeyer on an alleged oral contract of employment, claiming $589.08 for regular wages, $1,976.59 for overtime wages, and $500.00 rental on a pickup truck used by the plaintiff in the course of his work for the defendant.

Judgment below was for the plaintiff. The defendant's motions for directed verdict and for judgment notwithstanding the verdict were denied, and the defendant brings this appeal.

The questions raised by defendant on appeal are as follows: 1. Was the plaintiff acting as a contractor within the meaning of A.R.S. 32–1101 and therefore required to have a valid Arizona contractor's license at the time of performance of the work for which compensation is sought? 2. Was there a fatal inconsistency between the pleading and the proof of overtime work performed? 3. Was the verdict based in part on quantum meruit instead of contract as set forth in the pleadings? 4. Did the evidence sustain the judgment? 5. Did the instruction go beyond the pleadings and evidence?

The facts necessary for a determination of the issues in this case are as follows:

The defendant Linsenmeyer owned some property near Prescott, Arizona, known as The Gardens. The property was in a state of general disrepair, and Jackson was hired by Linsenmeyer to make needed repairs and to act as a caretaker and maintenance man. Jackson was to receive $50.00 per week for his work, plus housing. Linsenmeyer claims that any overtime was also to be included in the $50.00 wages, but Jackson claims that it was payment only for a 40 hour week.

Some time after Jackson had begun work, it was decided to repair and reopen some of the entertainment facilities contained in The Gardens. Jackson was appointed manager of the property, and began to ready the dance hall and swimming pool for use. It was at this time that Jackson began to record his overtime hours, relying on defendant's statement that "he would make it right" by him. The planned opening was 4 July, 1961, and Jackson worked many hours in excess of 40 hours per week trying to put the facilities in a good state of repair by that date. He was to receive additional compensation from the profit on the operations.

The dance hall was leased for $50.00 each Saturday night, while Jackson managed the swimming pool and snack bar personally, as well as making repairs and policing the grounds.

At various times, helpers were hired by Jackson. Linsenmeyer sometimes gave Jackson cash to pay the wages of these helpers, but on at least one occasion, the helpers were paid with Linsenmeyer's personal checks.

In order to do the clearing and hauling, etc., that was required by the nature of the job, Jackson used his own pickup truck. He claims that Linsenmeyer agreed to pay him $100.00 per month for the use of the truck until such time as one of Linsenmeyer's own trucks could be brought up, but that he had to use his own truck for five months. Linsenmeyer paid for the gas and maintenance of Jackson's truck.

There were plans to construct cabins and trailer lots on the property, and in pursuance of this plan, some of the old cabins on the property were demolished by Jackson. Again, Jackson was to receive extra compensation should the new guest facilities ever be put into operation. They were never built, however.

During the time between 11 May, 1961, when the employment began, and 18 October, 1961, when the plaintiff Jackson's employment was terminated, he drew $560.00 in wages and lived in a cabin on the premises without charge. The jury returned a verdict in his favor and against the defendant for $589.08 straight time wages, $1,320.00 overtime wages, and $350.00 truck rental.

The first question we will consider is whether the plaintiff was a "contractor" within the meaning of A.R.S. § 32–1101:

"Within this chapter, 'contractor' means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in ·connection therewith. The term contractor includes subcontractors and specialty contractors."

If plaintiff was a contractor, he was required by A.R.S. § 32–1153 to be the possessor of a valid contractor's license in order to bring an action for compensation on the contract. Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 (1951).

The recent case of Sobel v. Jones, 96 Ariz. 297, 394 P.2d 415 (1964), which contains a fact situation similar to that of the present case, states:

"The chief characteristic distinguishing an independent contractor from an employee is his right to control the manner of accomplishing the particular job. * * * The contractor typically agrees to do certain work for a specified or lump sum amount. * * *

"Keeping these tests in mind, we believe that the totality of circumstances * * * establishes that the intended relationship here was one of employer and employee. Plaintiff's 'control' over the building operations remained subject at all times to the dominion of the owner. Defendant hired some of the workers. Others were hired by plaintiff but he sometimes consulted defendant. * * * While plaintiff went through the motions of actually paying the laborers, defendant furnished the money. In other words, they were his employees, not plaintiffs. * * *

"While the plaintiff sometimes ordered the materials, defendant invariably paid for them. Clearly, we think, these facts show that plaintiff *was not a contractor*

*but rather a foreman or manager on the job.*

"At any rate, it is plain that *A.R.S. § 32–1153 was not meant to preclude recovery in this type of case.* The statutory purpose is to prevent unscrupulous or financially irresponsible contractors from deceiving and taking advantage of those who engage them to build. See Hunt v. Douglas Lumber Co., 41 Ariz. 276, 17 P.2d 815 (1933) [and Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 (1951)] * * *

"In the case at bar, defendant knew he was not hiring a licensed contractor. The parties never understood that plaintiff would be bound to complete the job on his own responsibility. * * We conclude that recovery is not precluded by A.R.S. § 32–1153 * * *." (Emphasis added.)

 It is clear in the present case also, that plaintiff was in reality an employee-foreman, rather than a contractor. His duties during the time he first worked as an employee of defendant (prior to the time that defendant claims he became a contractor) continued to be substantially the same during the full time he continued to work for the defendant. The defendant knew when he asked the plaintiff to do extra work that he was not a licensed contractor, and he may not now use the statute to deprive plaintiff of his just compensation. This is not the purpose of the statute. We find that plaintiff was at all times an employee of the defendant rather than a contractor.

 The defendant next contends that while the plaintiff pleaded an oral contract containing the elements of straight time wages, overtime wages and truck rental, the testimony indicates that any agreement as to overtime occurred after the original employment agreement had been entered into. Defendant contends that since plaintiff failed to move to conform to the pleadings at the close of the evidence, that he may not recover for the alleged separate contract for overtime payment. The plaintiff contends that the overtime provision was at most no more than an amendment to the original contract, and that it is therefore a part of the original contract. With this contention we agree.

The reason for the overtime agreement was to compensate for the added work which the defendant asked plaintiff to perform in renovating and repairing the recreational facilities. These additional duties did not disturb the intrinsic nature of plaintiff's employment. The additional work was the same general type of work that plaintiff had been performing since the commencement of the job. The discussion concerning the overtime related to an extension of plaintiff's duties rather than to a totally delineated project. We feel that there was, in fact, but a single contract which contained all of the elements pleaded by the plaintiff. It has been stated:

"It is a rudimentary principle that the allegata and probata must correspond. McNeill v. Marberry, 72 Ariz. 128, 231 P.2d 754. However, as was stated in Dougherty v. California Kettleman Oil Royalties, 9 Cal.2d 58, 69 P.2d 155, 169:

'* * * it is well settled that a mere difference in quantity of consideration between the pleading and proof is not a material variance. (Cits.) It has likewise been held, and for exactly the same reasons, that a mere change in the quantum of consideration to be paid under a contract does not constitute a change in the cause of action'."

Commerce Mortgage Company v. Title Realty Corp., 78 Ariz. 304 at 307, 279 P.2d 717 at 720 (1955).

We do not find that there was a material or fatal variance between the contract and the proof.

 The defendant next contends that the plaintiff sued on an express contract, and that he recovered on quantum meruit. Defendants cite an Arizona Supreme Court

case construing a suit on a written contract as support for his position:

"The law is that one cannot declare on an express contract and recover on quantum meruit." Brown v. Beck, 68 Ariz. 139 at 143, 202 P.2d 528 at 530 (1949).

We do not believe that Brown v. Beck, supra, is applicable to the instant case. The plaintiff in his complaint alleged in part that the contract between plaintiff and defendant provided,

"II (1) Plaintiff would work for defendant in Prescott, Arizona, for a wage of Fifty-Dollars ($50.00) per week, plus overtime for all hours over 40 hours per week."

It was, of course, impossible at the time the parties discussed the overtime work the plaintiff was to do, to know the exact amount of the overtime. The fact that the amount of hours of overtime to be spent under a contract of employment is uncertain at the time the contract is entered into, does not make the amount earned under the contract of employment any the less a part of the contract. It is a part of the contract, the performance of which may be proven and recovery allowed, just as any other portion of the contract.

Our Supreme Court in discussing a motion to dismiss, states as follows:

"The court should not grant a motion to dismiss unless it appears certain that the plaintiff would be entitled to no relief under any state of facts which is susceptible of proof under the claim as stated. Rule 8(a) Rules of Civil Procedure * * *. The purpose of the foregoing rule is to avoid technicalities and give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved." Mackey v. Spangler, 81 Ariz. 113, 115, 301 P.2d 1026, 1027 (1956).

Rule 54(d) of the Rules of Civil Procedure, 16 A.R.S., also reads:

"Demand for judgment

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

We feel that the complaint was adequate to inform the defendant of the nature of the plaintiff's demand and that the evidence was sufficient to sustain the finding as to the amount of overtime wages due plaintiff under the terms of the contract of employment.

The defendant next contends that the evidence is so conflicting it does not sustain the judgment. We have read that testimony, and while it is conflicting it does sustain the judgment.

"It was for the jury to reconcile the conflicts in the evidence and, since the verdict was for * * * [plaintiff], any controverted questions of fact necessary to sustain the verdict, we shall assume, were resolved by the jury in favor of * * * [plaintiff]." Karam & Sons Mercantile Co. v. Serrano, 51 Ariz. 397 at 409, 77 P.2d 447 at 452 (1938).

Since the jury found for the plaintiff, we must assume that plaintiff's explanations to the jury were credible and we are bound by the jury's decision on matters disputed by plaintiff and defendant where there was any substantial evidence from which reasonable men could have found ultimate facts that will sustain the verdict. Singleton v. Valianos, 84 Ariz. 51, 323 P.2d 697 (1958).

Finally, defendants contend that it was error to give the following instruction to the jury:

"A party to a contract, who, after a breach which would have authorized him to terminate it, stands by, permitting the other party to do the things required of him, will be treated as having waived the breach of that par-

**580**

ticular contract and cannot excuse his own later nonperformance by that prior default of the other party."

The defendant had in his answer alleged that plaintiff was "mentally and physically unable" to properly perform his work due to his "indulgences in Prescott". When evidence was introduced to the effect that defendant knew of plaintiff's alleged indulgences prior to the date of the termination of the contract, the question presented by this instruction was properly raised and supported by the evidence as well as the law. Pima Farms v. Fowler, 32 Ariz. 331, 258 P. 256 (1927).

The judgment is affirmed.

STEVENS, C. J., and DONOFRIO, J., concurring.